CITIZENS FOR FREE ENTERPRISE, a Colorado non-profit corporation; Palace, Inc., a Colorado corporation; the Chroma Corporation, a Colorado corporation; Harold L. Popiel, d/b/a The Gaslite Room; Sid King, d/b/a Crazy Horse Bar; Debi Scheufler; Vivian Cooke; Barney Frank, Inc., a Colorado corporation, d/b/a Tipsy Tiger; and Richard L. Bebo, d/b/a Bebo's Lounge, Plaintiffs-Appellees,

v.

DEPARTMENT OF REVENUE, STATE OF COLORADO; Alan N. Charnes, Executive Director, Liquor Control Division; and Marvin Eller, Director, Defendants-Appellants.

No. 81SA82.

Supreme Court of Colorado,
En Banc.

Aug. 9, 1982.

Rehearing Denied Aug. 30, 1982.

---

Law Offices of Bernard D. Morley, P. C., Bernard D. Morley, Denver, for plaintiffs-appellees: Citizens for Free Enterprise, Palace, Inc., Chroma Corp., Debi Scheufler, Vivian Cooke.

No appearance for Harold L. Popiel, d/b/a The Gaslite Room and Barney Frank, Inc. d/b/a Tipsy Tiger.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Richard H. Forman, Asst. Atty. Gen., Denver, for defendants-appellants.

LOHR, Justice.

This is an appeal from a judgment of the Denver District Court invalidating two regulations promulgated by the Colorado Department of Revenue (department) for the purpose of governing activities in establishments with liquor licenses. The appellants are the department, the Executive Director of its liquor control division, and the Director of that division, all of whom were the defendants in the trial court. We conclude that the court was correct in ruling that the regulation prohibiting activities "unduly designed to increase the consumption of alcoholic beverages" is unconstitutionally vague, but that it erred in striking down the rule prescribing standards for minimum employee attire and prohibiting certain sexually-oriented entertainment and conduct on liquor-licensed premises. Therefore, we affirm the judgment of the trial court in part and reverse it in part.

I.

On October 31, 1978, the department gave notice of a public hearing to be held for the purpose of considering proposed amendments to certain department regulations, including regulations 47–105.1 and 47–105.3. Following public hearings on December 1 and 21, 1978, at which interested persons presented oral and written statements, final regulations 47–105.1 and 47–105.3 were adopted on August 24, 1979, effective October 1, 1979.

Regulation 47–105.1, also referred to as the "conduct regulation," governs certain activities on the premises of establishments licensed to sell alcoholic beverages. The regulation includes general requirements for the orderly and inoffensive conduct of a liquor-licensed establishment, specific standards governing minimum clothing to be worn by hostesses and persons engaged in the sale or service of alcoholic beverages, proscription of specified sexually-oriented physical contact and of devices simulating particular parts of the human body, and prohibition of live entertainment or visual reproductions involving certain sexual acts or displays, actual or simulated.[1]

1. The regulation provides in full as follows: *Basis and Purpose*: The basis and purpose of this Regulation is as set forth in the Notice of Final Adoption and is incorporated herein by reference.

A. *Orderliness, Loitering, Serving of Intoxicated Persons.*

Each person licensed under this Article shall conduct his licensed premises in a decent, orderly and respectable manner, and shall not permit on his licensed premises the serving or loitering of an apparently intoxicated person or habitual drunkard, nor shall he permit profanity, rowdiness, undue noise, or other disturbances or activity offensive to the senses of the average citizen, or to the residents of the neighborhood in which the licensed establishment is located.

B. *Attire and Conduct of Employees and Patrons.*

No person licensed under this Article shall engage in or permit the following:

1. Employment or use of any person in the sale or service of alcoholic liquor in or upon the licensed premises while such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals.

2. Employment or use of the services of any hostess or other person to mingle with the patrons while such hostess or other person is unclothed or in such attire, costume or clothing as described in paragraph No. (1) above.

3. Any person on the licensed premises touching, caressing, or fondling the breasts, buttocks, anus or genitals of any other person.

4. Any employee or person on the licensed premises wearing or using any device or covering, exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion thereof.

C. *Entertainment*

The department's statement of basis and purpose accompanying Regulation 47–105.1 reflects that this regulation is based on the authority granted to the Executive Director of the department, as the state licensing authority, under the Colorado Liquor Code, section 12–47–101 *et seq.*, C.R.S.1973 (1978 Repl.Vol. 5 and 1981 Supp.), which specifically authorizes rules and regulations governing "standards of cleanliness, orderliness, and decency." Section 12–47–105(2)(a), C.R.S.1973 (1978 Repl.Vol. 5). The statement of purpose further provides that the necessity for this regulation was evidenced by the testimony of local law enforcement officers at the public hearings held in December. It notes that the testi-

Live entertainment is permitted on any licensed premises, except that:

1. No person licensed under this Article shall permit any person to perform acts of or acts which simulate:

(a) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.

(b) The touching, caressing or fondling of the breast, buttocks, anus or genitals.

(c) The displaying of the pubic hair, anus, vulva or genitals.

2. No licensee shall permit any person to use artificial devices or inanimate objects to depict any of the prohibited activities described above.

3. No licensee shall permit any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus.

D. *Visual Displays.*

No person licensed under this Article shall permit on his licensed premises the showing of film, still pictures, electronic reproduction, or other visual reproductions depicting:

1. Acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.

2. Any person being touched, caressed or fondled on the breast, buttocks, anus or genitals.

3. Scenes wherein a person displays the vulva or the anus or the genitals.

4. Scenes wherein artificial devices or inanimate objects are employed to depict, or drawings are employed to portray, any of the prohibited activities described above.

E. *Local Ordinances.*

This regulation shall not be deemed to authorize or permit any conduct, behavior or attire on licensed premises which is otherwise prohibited by any city or county ordinance.

mony revealed a direct association between increased law enforcement problems and licensed premises permitting the kinds of activity prohibited by the conduct regulation., These problems included prostitution and offers of prostitution, assaults, sales of narcotics, sales of alcoholic beverages to minors, and solicitation of drinks.

Regulation 47–105.3, also referred to as the "consumption regulation," prohibits a manufacturer, wholesaler, importer, or retailer of alcoholic liquors from offering to any person a game of chance, lottery, contest, coupon or drawing, or any merchandise, whether free or otherwise, where the offer is "unduly designed to increase the consumption of alcoholic beverages."[2]

The statement of basis and purpose accompanying this regulation provides that it was adopted pursuant to the Executive Director's authority under the Colorado Liquor Code to adopt regulations directed to "practices unduly designed to increase the consumption of alcoholic beverages," section 12–47–105(2)(a), C.R.S.1973 (1978 Repl.Vol. 5). The statement further declares that the purpose of the regulation is to narrow the scope of the previous regulation 47–105.3, which, when read literally, would prohibit legitimate business practices that are not unduly designed to increase the consumption of alcoholic beverages. The new regulation was considered more faithful to the language and intent of section 12–47–105(2)(a).

The appellees, who are holders of liquor licenses under the Colorado Liquor Code; dancers employed by such licensees; and a non-profit corporation, Citizens For Free Enterprise, whose members include owners, employees and customers of establishments subject to the department's regulations, filed a complaint in Denver District Court on September 27, 1979, and amended that complaint on October 2, 1979. They sought review of the two department regulations pursuant to the declaratory judgment provisions of C.R.C.P. 57 and section 13–51–101 et seq., C.R.S.1973 and 1981 Supp. and pursuant to section 24–4–106(4), C.R.S.1973 of the State Administrative Procedure Act (State APA).

The amended complaint alleged that the regulations were invalid because (1) they were not accompanied by statements of fiscal impact adequate to comply with section 24–4–103(8)(d), C.R.S.1973 (1978 Repl.Vol. 5) (1981 Supp.); (2) they were not based on the record made before the department as required by section 24–4–103(4), C.R.S.1973 (1978 Repl.Vol. 5) (1981 Supp.); and (3) the regulations exceeded the authority of the department. The amended complaint also alleged that the conduct regulation violated the free speech protections of Colo.Const. Art. II, § 10 and U.S.Const. amends. I and XIV, and that the consumption regulation was unconstitutionally vague. The appellees sought a declaratory judgment that the regulations are unconstitutional and were adopted in violation of the State APA, and requested an injunction prohibiting enforcement of those regulations.

Following oral argument, and based upon its review of the record made before the department in connection with the promulgation of the regulations, the trial court issued its findings, conclusions of law and order on May 15, 1980. It held that both regulations were issued without complying with the fiscal statement requirement of section 24–4–103(8)(d), C.R.S.1973 (1978 Repl.Vol. 5) (1981 Supp.), and that consequently they were void. It reasoned that the conclusory statements of the department concerning the fiscal impact of the regulations were insufficient to satisfy the requirement of this statute absent some evidence in the record to support those conclusions.

The court also concluded that the conduct regulation was invalid because it was not supported by substantial evidence in the record. It held that the substantial evidence requirement applies to department regulations by virtue of section 24–4–106(7), C.R.S.1973 of the State APA, and that the department's conclusion that increased crime results from the activities proscribed

2. The full text of regulation 47.105.3 is set out in section V of this opinion.

by the conduct regulation was not supported by such evidence. In this connection, the court ruled that the testimony of law enforcement officers at the public hearings did not constitute substantial evidence because it "amounts to nothing more than self-serving, unsupported testimony of interested parties."

The court further held that the conduct regulation was void either because it exceeded the scope of the department's rulemaking authority or because it was an unconstitutional exercise of the police power. The court reasoned that the Colorado Liquor Code authorizes regulations only where necessary for the protection of the health, safety or welfare of the people, and that, since there was no substantial evidence demonstrating that the conduct regulation served this purpose, it was not authorized by the Code. Similarly, it concluded that the absence of a demonstrated connection between the health, safety or welfare of the people and the conduct regulation rendered the regulation an improper exercise of the State's police power. Based on this reasoning the court also decided that the regulation was the product of an unconstitutional conclusive presumption that the proscribed activities are associated with crime, and held as well that the department had no authority to replace the legislative policy with respect to lewdness and obscenity set forth in Article 7 of Title 18, C.R.S. 1973, with a more restrictive standard of its own.

Finally, the court found that the consumption regulation was unconstitutionally vague. The court concluded that the prohibition of conduct "unduly designed to increase the consumption of alcohol" failed to give fair warning of what conduct is proscribed and created a danger of arbitrary and capricious enforcement.

The appellants then brought this appeal.[3] We affirm the judgment of the district court invalidating the consumption regulation for vagueness. However, we reverse

the judgment of the district court striking down the conduct regulation. We first address the objections to the regulations under the State APA and then turn to the constitutional challenges to those regulations.

## II.

The trial court held that the regulations were void because they were not accompanied by a fiscal impact statement satisfying the requirements of section 24–4–103(8)(d), C.R.S.1973 (1978 Repl.Vol. 5) (1981 Supp.). We disagree.

The furnishing of a fiscal impact statement is only one of several requirements contained in section 24–4–103(8)(d). That statute provides that all rules adopted after July 1, 1976, be submitted by the adopting agency to the legislative drafting office. The rules are then reviewed by the staff of the general assembly's committee on legal services to determine whether the rules are within the agency's rulemaking authority, and are later reviewed by the committee on legal services to determine whether the rules comply with the requirement of section 24–4–103(8)(a) that "[n]o rule shall be issued except within the power delegated to the agency and as authorized by law." Following presentation of the staff's findings at a public hearing held by the committee on legal services, the committee "shall, on affirmative vote, submit such rules, comments, and proposed legislation at the next regular session of the general assembly." Section 24–4–103(8)(d). Any member of the general assembly may then introduce legislation that rescinds or deletes portions of the rule, and each agency is directed to revise its rules in accordance with the action taken by the general assembly. Finally, section 24–4–103(8)(d) provides for the filing of fiscal impact statements:

Where the rule or amendment to an existing rule will have a fiscal impact on the state or any of its political subdivisions, the agency shall include a fiscal

---

**3.** The appeal was filed in this court because of the constitutional issues presented. *See* section 13–4–102(1)(b), C.R.S.1973.

statement thereof with the rule or amendment submitted to the legislative drafting office. Effective July 1, 1977, all rules submitted pursuant to this paragraph (d) that have a fiscal impact shall be accompanied by a fiscal statement. No rule that has a fiscal impact shall be deemed to be submitted unless it is accompanied by such a fiscal statement. The statement shall include an identification of the types of persons or groups who will bear the costs of the rule and the types of persons or groups who will benefit, directly or indirectly, from the rule.

When the fiscal impact requirement is thus viewed in context, it is evident that it is part of a broader scheme providing for legislative oversight of administrative rulemaking. The apparent purpose of the fiscal impact requirement is to facilitate that review process and, by making certain that the fiscal implications of administrative regulations are given consideration, to provide increased assurance that the regulations are consistent with the public interest.

■ The conclusion that we draw from this analysis of the statutory context of the fiscal impact statement requirement is that the role of the court in reviewing the sufficiency of those statements is limited. Where a statement has been submitted that the regulation will have no fiscal impact or setting forth what that impact will be, and the fiscal impact statement is not found objectionable by the general assembly, courts should presume the adequacy of the statement. Only where the statement of fiscal impact is clearly inadequate may the court intervene. With this background in mind, we turn to consideration of the fiscal impact statements submitted in connection with the conduct and consumption regulations.

With respect to the consumption regulation, the department did not submit a fiscal impact statement because it concluded that the regulation did not have such an impact. It informed the committee on legal services of this conclusion at the time of submitting the regulation. With respect to the conduct regulation, the following fiscal impact statement was submitted by the department:

> These regulations may have a fiscal impact on some retail liquor establishments (e.g. topless and bottomless bars) which will no longer be able to provide the sort of entertainment now provided. The size of the impact cannot be measured. It is problematical and will depend to a great degree on the ability of these establishments to maintain patronage levels using different forms of entertainment.

The trial court found these statements insufficient to comply with the fiscal impact requirement of section 24–4–103(8)(d) because they were not supported by evidence in the record, and because there was no evidence that the department made a good faith attempt to comply with the fiscal impact requirement or to collect the data necessary to perform that function. Consequently, it concluded that the department had abused its discretion and that the regulations were void. We disagree with the reasoning and conclusion of the trial court.

■ Section 24–4–103(8)(d) does not require that the fiscal impact determination be based upon or supported by the record before the administrative agency. Given the purpose of such statements and the difficult and uncertain task of determining such impacts, we deem it unwise to impose such a requirement. *See Florida-Texas Freight, Inc. v. Hawkins*, 379 So.2d 944 (Fla.1979).[4] Rather, the administrative

---

4. In *Florida-Texas Freight, Inc. v. Hawkins*, the Supreme Court of Florida addressed a challenge to an administrative regulation based upon an asserted failure to comply with the fiscal impact statement requirement imposed by Florida law. The appellees cite this case in support of the proposition that such impact statements are subject to judicial review. However, we find the nature of the review engaged in by that court instructive. The court held that substantial compliance with the fiscal impact requirement was all that was required and that the agency's conclusion that its regulation would have no fiscal impact did not require a remand to the agency absent "some

agency should conduct such investigations and research as are reasonably necessary to arrive at an estimate of fiscal impact or to determine that such impact cannot reasonably or reliably be quantified.

█ Because the consumption regulation was considered by the department to be of narrower scope than the regulation it replaced, the department reasonably could have concluded that the new regulation would not create a significant fiscal impact. The department's conclusion that the fiscal impact of the conduct regulation is problematical and could not be further explicated also appears to be reasonable. We can perceive no avenues for reasonable investigation or research that would permit the fiscal consequences of the conduct regulation to be determined and quantified with any degree of reliability.

Even if the nature and extent of the fiscal impact of these regulations could have been specified in greater depth or with greater precision, we think it relevant that the committee on legal services did not object to the sufficiency of these statements. In light of the inherent difficulty in estimating the fiscal impact of the revised regulations, and given the absence of objection to the statements by the committee on legal services, we cannot conclude that the fiscal impact statements are clearly inadequate.

### III.

The trial court also concluded that the conduct regulation was invalid because it was not supported by substantial evidence in the administrative record. Again, we disagree.

The premise of the trial court's reasoning was that the factual ingredient of an administrative regulation must be supported by the administrative record. In support of this premise the trial court cited section 24–4–106(7), C.R.S.1973, which provides that agency action shall be set aside if it is "unsupported by substantial evidence when the record is considered as a whole." As additional support for the trial court's con-

clusion, the appellees point to section 24–4–103(4), C.R.S.1973 (1981 Supp.), the provision of the State APA governing agency hearings conducted in connection with the promulgation of administrative regulations. We agree with the trial court's premise.

█ Our conclusion that the administrative record must support the factual ingredient of a regulation is based primarily upon the rulemaking requirements now prescribed in section 24–4–103(4), C.R.S.1973 (1981 Supp.). Prior to 1977, section 24–4–103(4) provided in relevant part:

> At the place and time stated in the notice, the agency shall hold a public hearing at which it shall afford interested persons an opportunity to submit written data, views, or arguments and to present the same orally unless the agency deems it unnecessary. The agency shall consider all submissions.

In 1977, the general assembly amended the statute by addition of the following requirements to the above quotation:

> The rules promulgated by the agency shall be based on the record which shall consist of proposed rules, evidence, exhibits, and other matters presented or considered, matters officially noticed, rulings on exceptions, any findings of fact and conclusions of law proposed by any party, and any written brief filed. After consideration of the relevant matter presented, the agency shall incorporate by reference in the rules adopted a written concise general statement of their basis and purpose. The written statement of the basis and purpose of a rule which involves scientific or technological issues shall include a detailed, analytical evaluation of the scientific or technological rationale justifying the rule.

Colo.Sess.Laws 1977, ch. 294, 24–4–103(4) at 1136.

The apparent purpose of this amendment was to formalize, to a limited degree, the agency rulemaking process by requiring a brief explanation of the reasoning process underlying an administrative regulation,

evidence to the contrary or a showing of preju- dice by a protestant." 379 So.2d at 946.

and by requiring that the regulation be based upon and tied to the administrative record. Thus, all regulations must be accompanied by a "concise general statement of their basis and purpose." Where a regulation involves scientific or technological issues, the statement of basis and purpose "shall include a detailed, analytical evaluation of the scientific or technological rationale justifying the rule." Further, all rules promulgated by the agency "shall be based on the record."[5]

The implications of this amendment for the nature of the judicial review process are substantial. Absent a statement of basis and purpose, a court can only guess at the reasoning process that led to adoption of the administrative regulation. Judicial review of a regulation under such circumstances could not be tied to the reasoning process actually employed by the administrative agency. The statement of basis and purpose assures that the administratively perceived necessity for the rule will be explicated and serves to provide a reference point against which the validity of the rule can be measured. It removes the review process from the realm of speculation and provides a context within which meaningful judicial review can occur. Similarly, the requirement that rules be "based on the record" provides a concrete body of material for assessing the basis of the administrative agency's conclusions. Rather than engaging in a de novo inquiry into whether the basis and purpose of the rule have some foundation in fact, the court is directed to the administratively compiled record. Viewed together, these requirements structure the processes of administrative rulemaking and judicial review by prescribing articulation of the rationale and compilation of the underlying support for administrative regulations.

The appellants contend that this interpretation and application of the 1977 amendment to section 24–4–103(4) is erroneous and reflects a misunderstanding of the nature of the administrative rulemaking process. Although focusing primarily upon the propriety of the trial court's use of the "substantial evidence" standard of review,[6] the appellants apparently contend that re-

---

**5.** We need not define the precise parameters of such a "record" in the present case. Whether such a record may be deemed to include extrarecord facts of common knowledge and whether such a record may be supplemented by an administrative agency following promulgation of its rules are questions we leave for another day. *See* section 24–4–103(4), C.R.S. 1973 (1981 Supp.); section 24–4–106(5), C.R.S. 1973; *see generally* 1 K. Davis, *Administrative Law Treatise* §§ 6:5 and 6:17 (2d ed. 1979 and 1982 Supp.); *Portland Cement Association v. Ruckelshaus*, 486 F.2d 375, 393 (D.C.Cir.1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).

**6.** Section 24–4–106(7), C.R.S.1973 prescribes the bases for setting aside agency action and, among other grounds, includes any agency action that is "arbitrary and capricious" or "unsupported by substantial evidence when the record is considered as a whole." Section 24–4–106(7) does not distinguish between rulemaking and adjudicatory functions of agencies for purposes of judicial review. Rather, it refers only to "agency action," which is in turn broadly defined to include "any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Section 24–4–102(1), C.R.S.1973 (1981 Supp.). We do not believe the inquiry in this case is substantially advanced by focusing on whether the trial court should have employed an "arbitrary and capricious" standard of review rather than its "substantial evidence" requirement. In the context of informal rulemaking, such as that envisioned under the State APA, such standards tend to merge. *See Pacific Legal Foundation v. Department of Transportation*, 593 F.2d 1338, 1343 n. 35 (D.C. Cir.1979) *cert. denied*, 444 U.S. 830, 100 S.Ct. 57, 62 L.Ed.2d 38 (1979); *Superior Oil Co. v. Federal Energy Regulatory Commission*, 563 F.2d 191, 199 (5th Cir. 1977); *see generally* K. Davis, *Administrative Law Treatise* §§ 29.00 to 29.00–2 (1982 Supp.). Aside from such verbal formulations, the underlying question is whether the agency action is reasonable: "Whenever the scope of review is somewhere between the two extremes of de novo review and complete unreviewability, as it usually is, the key to scope of review is not the choice of formulas or standards, such as 'substantial evidence' or 'arbitrary and capricious.' The key lies in the prevailing judicial choice of what content to put into the concept of reasonableness." K. Davis, *Administrative Law Treatise* § 29.00–1 at 528 (1982 Supp.). The critical inquiry we pursue here is whether the factual component of administrative rulemaking must be supported by the administrative record.

quiring factual support in the record for administrative regulations is inconsistent with the informal process employed by agencies for gathering information in connection with consideration of proposed regulations. However, we perceive no such inconsistency.

In this regard, it is instructive to consider developments with respect to the informal rulemaking procedure under the Federal Administrative Procedure Act, 5 U.S.C. § 553 (1976).[7] Although 5 U.S.C. § 553 does not require that rules be made "on the record," supplementary statutes relating to rulemaking by particular federal agencies, as well as federal judicial decisions, have recognized that requiring administrative rules to be supported by facts in the record is not inconsistent with an informal rulemaking procedure. *See e.g.*, K. Davis, *Administrative Law Treatise* §§ 6:10, 6:13, 6:14 (2d ed. 1978 and 1982 Supp.); *Almay, Inc. v. Califano*, 569 F.2d 674 (D.C.Cir.1978); *National Association of Food Chains, Inc. v. Interstate Commerce Commission*, 535 F.2d 1308 (D.C.Cir.1976); *National Nutritional Foods Association v. Weinberger*, 512 F.2d 688 (2d Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).

Properly applied, a requirement that an administrative regulation be defensible in terms of the agency's statement of basis and purpose, and with reference to the administrative record, does not undercut administrative flexibility or cast the courts in the role of second-guessing the agency. Rather, it serves to enhance the thoroughness of the administrative reasoning process in the first instance and to assure the effectiveness of subsequent judicial review.

The appellants also contend that this reading of the State APA is inconsistent with *Colorado Auto & Truck Wreckers Association v. Department of Revenue*, Colo.,

618 P.2d 646 (1980) (*Colorado Auto*) and *4–D Brothers v. Heckers*, 33 Colo.App. 421, 522 P.2d 749 (1974).

The appellants cite *Colorado Auto* for the proposition that under the State APA an agency is not required to present evidence on the record in support of its regulations. However, we do not read that case as stating a rule of general applicability. In *Colorado Auto* we considered a challenge to a Department of Revenue regulation promulgated pursuant to a state statute requiring the owner of a motor vehicle to surrender the certificate of title when his vehicle is "sold or otherwise disposed of as salvage." The agency regulation merely defined this statutory term. We held that, in this context, "[t]he department proposing the regulation has no affirmative duty to offer evidence in support of it," and that the fact that "only those objecting to the regulation made submissions at the rule-making hearing" did not compel the conclusion that the regulation was not "based on the record."

When viewed in context, it is clear that the reasonableness of the challenged regulation in *Colorado Auto* did not turn on factual determinations. Rather, it turned on consistency of the regulation with the purpose of the statute under which it was adopted, and required exercise of the agency's discretion based upon its expertise. Where the reasonableness of a regulation is based upon the exercise of policy judgments and not controverted questions of critical fact, the agency is not bound by contrary submissions reflecting a different policy preference, and the fact that the agency exercised its discretion in a manner contrary to that advocated by the objectors did not mean that the agency action was not "based on the record." As Professor Davis has stated, "At one end, rules may be based

---

7. Under the Federal APA, rulemaking may be either informal or formal. Formal rulemaking pursuant to 5 U.S.C. §§ 556, 557 (1976) requires essentially trial-type procedures, while informal rulemaking requires only informal notice and comment procedures preceding promulgation of administrative rules. *See generally* 1 K. Davis, *Administrative Law Treatise* § 6:2 (2d ed. 1978). The State APA prescribes informal notice and comment rulemaking, section 24–4–103, C.R.S.1973 and 1981 Supp., unless an agency's organic statute requires different procedures, *see* section 24–4–107, C.R.S. 1973. Consequently, for purposes of the State APA, the appropriate references for comparison with federal law are those cases interpreting and applying the Federal APA requirements contained in 5 U.S.C. § 553.

on law, on interpretation of a statute, and on policy preferences, and hardly at all on identifiable facts; such rules may clearly be valid without factual support." 1 K. Davis, *Administrative Law Treatise*, § 6:13 at 510 (2d ed. 1978). When viewed in light of the precise issue presented in *Colorado Auto*, that opinion is not inconsistent with our present reading of the State APA.

The appellants cite *4–D Brothers v. Heckers, supra,* for the proposition that there is a presumption of the existence of facts justifying an administrative regulation, and that, consequently, such facts need not appear in the record. However, that case was decided before the amendment to the State APA requiring that regulations be "based on the record." Moreover, it concerned a constitutional challenge to the regulation on the basis that it was an unreasonable exercise of the police power. Therefore, we discern no inconsistency between our present opinion and *4–D Brothers v. Heckers.*

The remaining question involves application of the general principles stated above to the facts of this case. It is on this question of application that we disagree with the trial court.

■ Included in the stated basis and purpose for the conduct regulation was the conclusion that increased criminal activity is associated with establishments permitting the activities proscribed by the regulation. We believe that the department was not unreasonable in basing its regulation on this conclusion, and that, to the extent necessary, it was supported by adequate evidence in the record.

First, the record before the department contained testimony by various police officers concerning the law enforcement problems associated with establishments permitting the activities proscribed by the conduct regulation, and several letters from law enforcement officers stating that establishments of this nature foster increased criminal activity. Although the evidence was hardly conclusive on the link between criminal activity and the prohibited conduct, this is not a case where the department's conclusion is unsupported by any evidence in the record. We do not agree with the trial court that the department was required to discount this evidence totally because it "amounts to nothing more than self-serving, unsupported testimony of interested parties." Indeed, the depth of experience that the police officers possessed in law enforcement as related to liquor-licensed premises entitles the department to give weight to their statements.

Second, and perhaps of more importance, is the nature of the "factual" findings underlying the department's conclusion. In applying the "based on the record" requirement of section 24–4–103(4), courts should display sensitivity to the range and nature of determinations that must be made by an administrative agency. On the one end of the continuum, regulations may be based primarily upon policy considerations, with factual determinations playing a tangential or unimportant role. In that context, specific factual support for the regulation should not be required, although the reasoning process that leads to its adoption must be defensible. *See Colorado Auto & Truck Wreckers Association v. Department of Revenue, supra;* K. Davis, *Administrative Law Treatise* §§ 6:13, 14:28 (2d ed. 1978). On the other extreme, the necessity for the regulation may turn upon a discrete fact capable of demonstrable proof. In that case, the reasonableness of agency action will depend upon the presence of factual support for its determination. K. Davis, *Administrative Law Treatise*, §§ 6:13, 14:28 (2d ed. 1978). Often, the reasonableness of agency action will involve combined factual determinations and policy choices, and the nature and scope of judicial review must be appropriately tailored depending upon which is predominant. In this respect, the United States Supreme Court has recently recognized that regulations may be based on "judgmental or predictive facts," which are primarily founded on policy choices rather than factual determinations and which are not capable of definitive proof. In evaluating the adequacy of the record to support such factual determinations, some

deference to administrative expertise is appropriate. *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978);[8] *accord, National Small Shipments Traffic Conference, Inc. v. CAB*, 618 F.2d 819 (D.C.Cir. 1980); *see generally* K. Davis, *Administrative Law Treatise* § 29.00–1 (1982 Supp.).

In the instant case, the connection between the activities proscribed by the conduct regulation and increased crime is not presently subject to definitive resolution. Two studies on the link between pornography and antisocial behavior were submitted to the department. They consisted of an excerpt from the *Report of the Commission on Obscenity and Pornography* (1970) and G. N. Braucht, *Review of Published Empirical Research on the Relationship Between Pornography and Antisocial Behavior*, and reflect the inconclusive results of research in this area. Indeed, after extensive review of the previous studies relevant to the department's conduct regulation, Braucht stated: "The most appropriate judgment regarding this body of published studies is that more research needs to be done before any firm conclusions can be drawn." When viewed in light of the materials presented to the department, the breadth and judgmental or predictive nature of the determinations made by the department, and the substantial element of policy choice inherent in the department's action, we conclude that the department has acted reasonably in

promulgating the conduct regulation. We must be mindful that our task is not to substitute our judgment for that of the administrative agency; rather, it is to assure that the regulation is the product of reasoned decision-making fairly defensible in light of the material before the agency and its latitude in the resolution of policy matters. We believe this standard has been met.

## IV.

■ The trial court also held that the conduct regulation was void either because it was outside the authority delegated to the department by the general assembly or because it was an unconstitutional exercise of the police power. These holdings were premised on its conclusion that the conduct regulation was not reasonably necessary for the promotion of the public health, safety or welfare. As part III of our opinion demonstrates, the department properly concluded that the conduct regulation was appropriate based on crime prevention considerations directly related to the promotion of public safety and welfare. Thus, the conduct regulation is within the scope of the police power. *See, People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *People ex rel. Dunbar v. Kogul*, 179 Colo. 394, 501 P.2d 738 (1972); *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 493 P.2d

---

**8.** In *FCC v. National Citizens Committee for Broadcasting, supra*, the Supreme Court upheld a Federal Communications Commission regulation prospectively barring initial licensing or transfer of newspaper-broadcast combinations where there is common ownership of a radio or television broadcast station and a daily newspaper located in the same community. Existing "co-located" combinations were permitted to continue, with the exception of 16 egregious cases for which divestiture was required. The Court of Appeals held that limitation of the divestiture requirement to these 16 cases was arbitrary and capricious. The Supreme Court reversed this part of the judgment, stating:

[T]o the extent that factual determinations were involved in the Commission's decision to "grandfather" most existing combinations, they were primarily of a judgmental or predictive nature—*e.g.*, whether a divestiture requirement would result in trading of stations with out-of-town owners; whether new owners would perform as well as existing crossowners, either in the short run or in the long run; whether losses to existing owners would result from forced sales; whether such losses would discourage future investment in quality programming; and whether new owners would have sufficient working capital to finance local programming. In such circumstances complete factual support in the record for the Commission's judgment or prediction is not possible or required; 'a forecast of the direction in which the future public interest lies necessarily involves deductions based on the expert knowledge of the agency' *FPC v. Transcontinental Gas Pipe Line Corp.*, 365 U.S. 1, 29 [81 S.Ct. 435, 450, 5 L.Ed.2d 377] (1961).

436 U.S. at 813–14, 98 S.Ct. at 2121, 56 L.Ed.2d at 726.

660 (1972). Similarly, because the conduct regulation is founded on the promotion of the public welfare, it furthers an expressed purpose of the Colorado Liquor Code and so treats subjects of legitimate concern to the department in the exercise of its authority under the Code. *See* section 12–47–102(1) and 12–47–105, C.R.S.1973.[9]

We also reject the argument that the conduct regulation is the product of an unreasonable, arbitrary, and unconstitutional conclusive presumption in violation of the principles set forth in *City and County of Denver v. Nielson,* 194 Colo. 407, 572 P.2d 484 (1977). As stated in part III of this opinion the department appropriately determined from the record, and not from some unsupported presumption, that the activities proscribed by the conduct regulation are associated with an increase in violations of the criminal laws. Since the conduct regulation is not based on "an arbitrary classification lacking in rational justification," it is not constitutionally deficient. *Chiappe v. State Personnel Board,* Colo., 622 P.2d 527, 532 (1981); *compare City and County of Denver v. Nielson, supra.*

## V.

 Because the district court concluded that the conduct regulation was invalid for other reasons, it did not address the appellees' contention that the regulation is unconstitutional because it prohibits expression protected by *U.S.Const.* amends. I and XIV and *Colo.Const.* Art. II, § 10. Since

we reject these alternative grounds for striking down the conduct regulation, we address the appellees' constitutional challenge.

Included within the nude entertainment proscribed by sections C and D of the conduct regulation are forms of expression protected by the free speech guarantee of the United States and Colorado Constitutions. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982 (Colo.1981). As a result, total suppression of this form of expression would not be constitutionally permissible. *Id.*

However, in *California v. LaRue, supra,* the United States Supreme Court upheld state regulations substantially similar to parts C and D of the regulation at issue in this case against a First Amendment challenge. There, the court first noted that the challenged regulations "come to us, not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink," and that "[w]hile the States, vested as they are with general police power, require no specific grant of au-

---

**9.** The appellees assert an alternative basis for upholding the trial court's determination that the regulation was in excess of the department's powers. They contend that the regulation was beyond the department's authority because it is not specifically authorized to promulgate regulations governing entertainment and dress in liquor-licensed establishments. We find this argument unpersuasive. The department is delegated broad authority to "[m]ake such general rules and regulations . . . as necessary for the proper regulation and control of the manufacture, distribution, and sale of malt, vinous, and spiritous liquors and for the enforcement of this article . . ." section 12–47–105(1)(b), C.R.S.1973 (1978 Repl.Vol. 5). Further, section 12–47–105(2)(a), C.R.S.1973 (1978 Repl.Vol. 5) provides that these regulations may include but are not limited to speci-

fied subjects including "standards of cleanliness, orderliness, and decency." Mindful of the overriding purpose of the statute to protect "the economic and social welfare and the health, peace, and morals of the people of this state," section 12–47–102(1), C.R.S.1973 (1978 Repl.Vol. 5), and in light of the above delegations of rulemaking authority, we conclude that the conduct regulation was within the department's authority. *See People v. Willson,* 187 Colo. 141, 528 P.2d 1315 (1974). In reaching our conclusion, we also necessarily reject the argument that in prescribing "Offenses Relating to Morals" in Article 7 of Title 18, section 18–7–101 *et seq.,* C.R.S.1973 (1978 Repl.Vol. 8 and 1981 Supp.) (dealing specifically with obscenity), the legislature has automatically foreclosed regulations by the department addressing this same concern.

thority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." 409 U.S. at 114, 93 S.Ct. at 395, 34 L.Ed.2d at 349–50. The court then noted that the agency responsible for promulgating the regulation had determined that "sale of liquor by the drink and lewd or naked dancing should not take place in bars or cocktail lounges for which it has licensing responsibility" and that this conclusion could not be said to be irrational. 409 U.S. at 115, 93 S.Ct. at 395, 34 L.Ed.2d at 350. Although the court acknowledged that the regulations proscribed some forms of expression that were not obscene, it noted that "as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases," and that the challenged regulations prohibited performances that "partake more of gross sexuality than of communication." 409 U.S. at 117–18, 93 S.Ct. at 396–97, 34 L.Ed.2d at 351–52. Finally, the court deemed it a "critical fact . . . that California has not forbidden these performances across the board." 409 U.S. at 118, 93 S.Ct. at 397, 34 L.Ed.2d at 352. In light of the narrow range of applicability of the regulation, the nature of the expression proscribed, and the added presumption of validity in favor of the regulation resulting from the Twenty-first Amendment, the court concluded that the regulation did not violate the Federal Constitution.

More recently, the United States Supreme Court rejected a First Amendment attack on a state statute prohibiting topless dancing in state liquor-licensed establishments. *New York State Liquor Authority v. Bellanca, supra.* Again, the court relied primarily on the fact that the prohibition applied only to establishments licensed by the State to serve liquor and the added presumption in favor of the validity of the statute conferred by the Twenty-first Amendment.

In light of these decisions, the appellees' contention that the conduct regulation violates the First Amendment to the Federal Constitution is not well-taken.

The appellees nevertheless contend that we should rely upon independent state grounds and strike down the conduct regulation on the basis of the free speech guarantee of *Colo.Const.* Art. II, § 10.[10] We disagree and follow the reasoning of the United States Supreme Court in *California v. LaRue, supra.*

First, although our state constitution is not qualified by the Twenty-first Amendment to the Federal Constitution, a comparable constitutional provision recognizing the broad authority of the state over the manufacture, sale, and distribution of intoxicating liquors is found in *Colo.Const.* Art. XXII, § 1,[11] and we have previously recognized the broad police power of the state in regulating the sale and use of liquor. *Mr. Lucky's Inc. v. Dolan,* 197 Colo. 195, 591 P.2d 1021 (1979); *New Safari Lounge, Inc. v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977). Second,

10. *Colo.Const.* Art. II, § 10 provides:
 No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.

11. That constitutional provision states:
 On the thirtieth day of June, 1933, all statutory laws of the state of Colorado heretofore enacted concerning or relating to intoxicating liquors shall become void and of no effect; and from and after July 1st, 1933, the manufacture, sale and distribution of all intoxicating liquors, wholly within the state of Colorado, shall, subject to the constitution and laws of the United States, be performed exclusively by or through such agencies and under such regulations as may hereafter be provided by statutory laws of the state of Colorado; but no such laws shall ever authorize the establishment or maintenance of any saloon.

as discussed in part III of this opinion, we cannot conclude that the department has acted unreasonably or irrationally in promulgating this regulation. Third, the challenged portion of the conduct regulation promulgated by the department is essentially identical to the regulation at issue in *California v. LaRue, supra.*[12] As in that case, the proscribed conduct partakes more of "gross sexuality than of communication." Finally, and of critical importance, the regulation is limited to liquor-licensed establishments and does not constitute a blanket prohibition of these performances. *See Marco Lounge, Inc. v. City of Federal Heights, supra.* Under these facts, we do not believe that vindication of the interests protected by *Colo.Const.* Art. II, § 10 requires invalidation of the conduct regulation.[13]

### VI.

■ Finally, we address the trial court's conclusion that the consumption regulation is unconstitutionally vague. That regulation provides:

No manufacturer, wholesaler, importer or retailer of alcoholic liquors shall offer any game of chance, lottery, contest, coupons or drawing to any person or persons where such offer is of a nature or made in a manner so as to be *unduly designed to increase the consumption of alcoholic beverages.* No manufacturer, wholesaler, importer or retailer of alcoholic liquors shall offer any merchandise of value, free or otherwise, either with or without the purchase of alcoholic liquors, to any per-

son or persons, where such offer is of a nature or made in a manner so as to be *unduly designed to increase the consumption of alcoholic beverages.* (Emphasis added.)

The trial court found that the italicized portions of the regulation created such uncertainty that the regulation was inconsistent with the requirement of fair warning necessary to comply with the due process guarantee, *U.S.Const.* amend. XIV; *Colo. Const.* Art. II, § 25. We agree.

In *People v. Smith*, 638 P.2d 1, 3 (Colo. 1981), we recently stated the applicable test for unconstitutional vagueness and the policies that guide our application of that standard:

Several basic values are served by the prohibition of vague statutes. The requirement of fundamental fairness embodied in the concept of due process of law forbids prosecution of any individual for conduct which he would not reasonably understand to be proscribed. *E.g., People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). The vagueness doctrine also seeks to minimize that potential for arbitrary and discriminatory enforcement which inheres in criminal statutes of uncertain prohibitory scope. *E.g., People in the Interest of C. M.* [Colo., 630 P.2d 593], *supra; People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974). It serves as well to assure that courts and juries have adequate standards to enable them to apply the law consistently and in accord with legislative intent. *See People v. Hoehl*

**12.** The provisions in the conduct regulation proscribing nude entertainment are contained in sections C and D of that regulation and are set out above in n. 1, *supra.* In *California v. LaRue, supra*, the Supreme Court summarized the challenged portions of the regulation at issue in that case as prohibiting the following types of conduct:

(a) The performance of acts, or simulated acts, of "sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law";

(b) The actual or simulated "touching, caressing or fondling on the breast, buttocks, anus or genitals";

(c) The actual or simulated "displaying of the pubic hair, anus, vulva or genitals";

(d) The permitting by a licensee of "any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus"; and, by a companion section,

(e) The displaying of films or pictures depicting acts a live performance of which was prohibited by the regulations quoted above.

**13.** Of course, in upholding this regulation against facial constitutional attack we do not foreclose constitutional challenges to the regulation as applied to specific factual situations. *See Commonwealth v. Sees*, 374 Mass. 532, 373 N.E.2d 1151 (1978).

[193 Colo. 557, 568 P.2d 484], *supra; People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). The commonly stated test for determining if a penal statute sufficiently serves these values is whether the statute "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application. . . ." *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). As the appellees note, the prohibition of practices "unduly designed to increase the consumption of alcoholic beverages" could be interpreted to preclude the provision of appetizers in connection with the sale of liquor; the commonly employed device of "happy hours;" special promotional events where unlimited alcohol is available for a fixed price; and tournaments concerning various common bar games, such as pool or darts. We simply cannot determine with any degree of certainty what activities are proscribed by the consumption regulation. Similarly, the entities and individuals subject to the regulation must necessarily guess as to its meaning, and the uncertain line between proscribed and legitimate activity is an invitation to arbitrary and discriminatory enforcement. This result is not constitutionally permissible. *See People in the Interest of C. M.*, 630 P.2d 593 (Colo. 1981); *LDS, Inc. v. Healy*, 197 Colo. 19, 589 P.2d 490 (1979); *Trail Ridge Ford, Inc. v. Colorado Dealer Licensing Board*, 190 Colo. 82, 543 P.2d 1245 (1975).

The appellants contend that the validity of the regulation is buttressed by the fact that section 12–47–105(2)(a) authorizes the department to promulgate regulations governing "practices unduly designed to increase the consumption of alcoholic beverages" and that the consumption regulation merely tracks this statutory language.

However, as the trial court recognized, the statute indicates the permissible areas of regulation, while the consumption regulation defines the boundaries of permissible conduct of licensees. While the proper area of regulatory action may be broadly worded, that authority must be implemented in a manner that affords fair warning of what conduct is proscribed.

Nor are we persuaded by the appellants' argument that the present regulation represents a narrowing of its predecessor and that its validity is enhanced by this fact. The present consumption regulation must meet the constitutional requirement of definiteness on its own merits. The historical background of the regulation does not alter the nature of this inquiry.

Finally, the appellants argue that the regulation should be read in the context of the statutory prohibitions on sale of liquor to minors and visibly intoxicated persons, section 12–47–128(1)(a), C.R.S.1973 (1978 Rep.Vol. 5), and that, when so read, it is not unconstitutionally vague. However, reading the regulation as qualified by the above statute would require us to engage in impermissible "wholesale legislative revision." *People in the Interest of C. M., supra*, 630 P.2d at 596. Although the department could have confined the sweep of its regulation within proper limits of constitutional specificity by further definition of its terminology and scope, it has not done so, and we perceive no defensible basis on which we can remedy that deficiency. *See LDS, Inc. v. Healy, supra.*[14]

### VII.

We conclude that the trial court erred in striking down the department's conduct regulation, and so reverse that part of the court's judgment. We affirm the judgment of the trial court invalidating the consumption regulation because it is unconstitution-

14. In this respect, the present case differs from *Mr. Lucky's, Inc. v. Dolan, supra*, cited by the appellants. In that case, the challenged statute, when read in context, provided an objective standard against which its application could be measured. In the present case, we see no basis for interpreting the regulation in such a way that licensees subject to its proscription may know what conduct is prohibited and so that the regulation's application may be subjected to review under objective standards.

ally vague. The case is remanded to the district court with directions to enter judgment in accordance with the views expressed in this opinion.

DUBOFSKY, J., does not participate.