7250 CORPORATION, a Colorado corporation, d/b/a Pecos Junction, Plaintiff–Appellee,

and

Burkey Management, Inc., d/b/a 7000 North Washington, 6700 North Federal and 5580 North Federal, Intervening Plaintiff–Appellee,

v.

The BOARD OF COUNTY COMMISSIONERS FOR ADAMS COUNTY; and the Members thereof, Steven E. Cramer, Leo Younger and Harold Kite; Edward Camp in his official capacity as Sheriff for Adams County and James Smith in his official capacity as District Attorney for Adams County; and Donald E. Lunnon, Defendants–Appellants.

No. 89SA123.

Supreme Court of Colorado, En Banc.

Oct. 9, 1990.

Rehearing Denied Nov. 13, 1990.

Irvin Borenstein, Denver, for plaintiff-appellee 7250 Corp..

Arthur M. Schwartz, P.C., Michael W. Gross, Denver, for plaintiff appellee Burkey Management, Inc.

James F. Smith, Adams County Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for defendant-appellant James F. Smith, Dist. Atty.

Robert J. Loew, Adams County Atty., Terry Ross, Asst. County Atty., Brighton, for defendant-appellant Adams County.

Justice QUINN delivered the Opinion of the Court.

This case involves the constitutionality of an Adams County ordinance concerning the operation of nude entertainment establishments, not licensed to sell alcoholic beverages. The ordinance places restrictions on the age of the patrons and the employees of such establishments, the physical location of such establishments, and the days and hours during which such establishments will be permitted to operate. 7250 Corporation, doing business as Pecos Junction (hereinafter referred to as Pecos Junction), filed an action in the Adams County District Court against the Adams County Board of County Commissioners and sought declaratory and injunctive relief against the enforcement of the ordinance. Pecos Junction challenged the ordinance on the basis that it violated the Free Speech Clauses of the United States and Colorado Constitutions, U.S. Const. amend. I; Colo. Const. art. II, § 10, and due process and equal protection of the laws under the federal and state constitutions, U.S. Const. amend. XIV; Colo. Const. art. II, § 25. The district court declared the ordinance unconstitutional and enjoined its enforcement. We reverse the judgment.[1]

## I.

In November 1987, the Adams County Board of County Commissioners enacted Ordinance No. 1, entitled "Nude Entertainment Ordinance," which is appended to this opinion. The ordinance was enacted pursuant to section 30–15–401(1), 12A C.R.S. (1986), which states, in pertinent part, that:

> [T]he board of county commissioners has the power to adopt ordinances for control or licensing of those matters of purely local concern which are described in the following enumerated powers:
>
> (*l*)(I) To adopt reasonable regulations for the operation of establishments open to the public in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishment; except that such regulations shall not be tantamount to a complete prohibition of such operation. Such regulations may include the following:
>
> (A) Minimum age requirements for admittance to such establishments;
>
> (B) Limitations on the hours during which such establishments may be open for business; and
>
> (C) Restrictions on the location of such establishments with regard to schools, churches, and residential areas.

Subsection (*l*)(III) of section 30–15–401(1) provides as follows:

> Nothing in the regulations adopted by the board of county commissioners pursuant to this paragraph (1) shall be construed to apply to the presentation, showing, or performance of any play, drama, ballet, or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher education, or other similar establishment as a form of expression of opinion or com-

---

**1.** Because the district court declared the Nude Entertainment Ordinance unconstitutional, appellate jurisdiction properly lies in this court rather than in the court of appeals. § 13–4–102(1)(b), 6A C.R.S. (1987).

munication of ideas or information, as differentiated from the promotion or exploitation of nudity for the purpose of advancing the economic welfare of a commercial or business enterprise.

The Nude Entertainment Ordinance adopted by Adams County contained a preface in the nature of a declaration of intent or purpose which stated that there are many such establishments in Adams County not holding liquor licenses and not subject to the Colorado Liquor Code and that such establishments "adversely impact the residential neighborhoods in which they are located" by attracting transients, creating parking and traffic problems, increasing crime and noise, decreasing property values, creating safety hazards for children, and contributing to the "overall deterioration of neighborhood quality"; that it is the intent of the county commissioners "to serve a substantial government interest by attempting to preserve the quality and vitality of residential neighborhoods in Adams County"; that "alternative avenues of communication are not unreasonably limited for 'speech' of this nature"; and that the Colorado legislature has expressly authorized the adoption of such an ordinance pursuant to section 30–15–401(1)(*l*)(I). The ordinance applies to any establishment open to the public "in which persons appear in a state of nudity for the purpose of entertaining such establishment's patrons," but does not apply to any liquor licensed establishment offering nude entertainment, since such establishments are regulated by the Colorado Liquor Code. A person appears in a "state of nudity," according to the ordinance, when such person "is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals." The restrictions imposed on the op-

eration of nude entertainment establishments are as follows:

No one under 21 years of age shall be admitted to any Nude Entertainment Establishment. This minimum age limitation also applies to any employees, agents, servants or independent contractors working on the premises during hours when nude entertainment is being presented.

Nude entertainment shall only be available at Nude Entertainment Establishments from the hours of 4:00 p.m. to 12:00 midnight, Monday through Saturday of each week.

No Nude Entertainment Establishment shall be operated or maintained within 500 feet of any residentially zoned or used property, measured from the closest property line of such residential property to the property line of the Nude Entertainment Establishment.

No Nude Entertainment Establishment shall be operated or maintained within 500 feet of any school or church property, measured from the closest property line of such school or church property to the property line of the Nude Entertainment Establishment.

The ordinance became effective on January 5, 1988, but expressly authorized any establishment operating on that date in violation of the location restrictions to continue operating for a six-month period of amortization, at the end of which compliance with all restrictions would be required. A violation of the ordinance is a class 2 petty offense punishable by a fine of $300 for each separate violation. Three or more violations in any one year period would constitute a public nuisance which could subject the establishment to an abatement action pursuant to the state Public Nuisance Statute, §§ 16–13–301 to –317, 8A C.R.S. (1986 & 1990 Supp.).[2]

**2.** Subsection 30–15–401(1)(*l*)(II), 12A C.R.S. (1986), states:

The board of county commissioners may enact ordinances which provide that any establishment which engages in repeated or continuing violations of regulations adopted by the board shall constitute a public nui-

sance. The county attorney of such county, or the district attorney acting pursuant to section 16–13–302, C.R.S., may bring an action in the district court of such county for an injunction against the operation of such establishment in a manner which violates such regulations.

In December 1987 Pecos Junction filed its complaint for injunctive and declaratory relief in the Adams County District Court.[3] Pecos Junction alleged that the state enabling act, § 30–15–401(1)(*l*), 12A C.R.S. (1986), and the Nude Entertainment Ordinance violated the United States and Colorado Constitutions for several reasons, including, as pertinent here, the following: that the state enabling statute violated equal protection of the laws by creating an impermissible distinction between nude entertainment presented in nude entertainment establishments and other forms of nude entertainment presented elsewhere; that the ordinance restricted access to nude entertainment in violation of Pecos Junction's free speech rights; that the ordinance's age restrictions violated the free speech rights of persons under 21 years of age; that the limitations on the hours of operation violated equal protection of the laws; and that the six-month amortization period deprived Pecos Junction of its property in violation of due process of law.

The district court conducted an initial hearing on Pecos Junction's request for a preliminary injunction. It was demonstrated at the hearing that Pecos Junction is currently located in an area of Adams County zoned as a general retail and service district and is within a 500–foot radius of residentially-zoned property. Testimony from Grace Coan of the Adams County Planning and Development Services Department established that there were ten square miles of industrially-zoned property in Adams County, of which at least fifty percent is presently vacant, and that a nude entertainment establishment could locate in those areas with no special permit. Coan also testified that there were 148 industrial buildings on the market and 117 industrially-zoned vacant properties. In addition, Coan stated that there were approximately 1100 square miles of agriculturally-zoned property in the county where a nude entertainment establishment could be located after obtaining a conditional use permit from the Board of County Commissioners.

At the same hearing, Paul Bekkela, the current owner and operator of Pecos Junction, testified that the form of entertainment offered at his establishment consisted of nude dancing. He further testified that any relocation to those areas would require a huge capital investment not within his economic means and that he could not make a profit if he were forced to locate in an industrially-zoned or agriculturally-zoned area. Roy Shuster, a former real estate agent, confirmed that a large capital investment would be needed if Bekkela were to move his establishment to some other area. The district court denied Pecos Junction's request for a preliminary injunction and conducted a trial on the merits three months later.

At the trial, Sergeant J.J. Long of the Adams County Sheriff's Department testified on behalf of the county. He described the results of a study conducted over several years of approximately 35 to 40 nude entertainment establishments located in the county. This study revealed that 65 percent of the patrons of such establishments were nonresidents of the county, and that there was a higher crime rate in those areas where nude entertainment was offered. In his study, Long analyzed the crimes reported on or near the one block area on which Pecos Junction and several other business establishments were located. Of 24 crimes reported in this area, 20 crimes occurred within the block itself and 10 of those offenses took place at or very close to Pecos Junction. The crimes reported included aggravated assault, theft, burglary, driving under the influence, prostitution, and possession of narcotics. Long also described serious traffic problems in the area where Pecos Junction was located. It was not uncommon, according to Long,

---

**3.** Barkley Management, Inc., a Colorado corporation, doing business as the 7000 N. Washington, 6700 N. Federal, and 5580 N. Federal, later filed a motion to intervene in the action. The three establishments owned and operated by Barkley Management offer nude entertainment, are non-liquor licensed establishments, and are located in unincorporated Adams County. The motion to intervene was granted. We refer to all the nude entertainment establishments involved in this opinion collectively as Pecos Junction.

for neighbors in the area to complain that patrons of Pecos Junction had parked their cars in front of residents' homes and had blocked driveways. Complaints had also been made about patrons driving their cars across lawns and damaging shrubbery and trees.

At the conclusion of the evidence, the district court determined that nude dancing was constitutionally protected speech. The Nude Entertainment Ordinance, in the court's view, was not content neutral because it treated nude entertainment establishments not licensed to serve liquor differently from establishments that featured other forms of dancing. Although the court acknowledged that nude entertainment establishments generated increased crime and safety hazards, it ruled that the county had failed to carry its burden of showing a substantial governmental interest "sufficient to outweigh the grave interest of citizens in the right of free expression." The court accordingly concluded that the ordinance placed an inappropriate and impermissible burden on "constitutionally-protected rights." The district court, however, failed to specifically address Pecos Junction's equal protection claims regarding the state enabling statute and its free speech claim concerning the time, place, and manner restrictions imposed by the ordinance, and Pecos Junction's due process claim with respect to the ordinance's six-month amortization period.

In appealing the judgment, the board of county commissioners argues that the Nude Entertainment Ordinance complies with the constitutional standards applicable to nude entertainment under both the United States and Colorado Constitutions. In support of the district court's declaration of unconstitutionality, Pecos Junction raises several legal claims alleged in its district court complaint but not addressed in the court's ruling. In the interest of judicial economy we elect to address these claims also.

## II.

We first consider, as a threshold matter, Pecos Junction's claim that section 30–15–

401(1)(*l*), 12A C.R.S. (1986), the state enabling statute under which the Adams County ordinance was adopted, violates equal protection of the laws by impermissibly differentiating between forms of expression. Specifically, Pecos Junction argues that the enabling statute authorizes a board of county commissioners to regulate the operation of nude entertainment establishments which promote or exploit nudity "for the purpose of advancing the economic welfare of a commercial or business enterprise," but expressly exempts from regulation "the presentation, showing, performance of any play, drama, ballet, or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher education, or other similar establishment as a form of expression of opinion or communication of ideas or information." § 30–15–401(1)(*l*)(III), 12A C.R.S. (1986). We note in passing that it is seldom necessary for a court to analyze a statute implicating free speech rights under equal protection analysis because the substantive guarantees of freedom of expression serve as the strongest prohibition against any limitations placed on that right, with the result that a law classifying persons in the exercise of speech or expression must meet the strict standard for constitutionality without resort to equal protection analysis. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 817 (2d ed. 1983). Although the district court did not address the validity of the state enabling act in its ruling, we believe it appropriate to do so here because if, as argued by Pecos Junction, the state enabling act is constitutionally deficient, then the Nude Entertainment Ordinance would be void from its inception.

## A.

The right to equal protection of the laws "guarantees that all parties who are similarly situated receive like treatment by the law." *J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982). When a legislative enactment is subjected to equal protection analysis, the level of judicial scrutiny will vary with the type of classification employed and the nature of the right affected. In resolving

equal protection claims under the Colorado Constitution, "we have followed the analytical mode developed by the United States Supreme Court in construing the Equal Protection Clause of the Fourteenth Amendment." *Tassian v. People,* 731 P.2d 672, 674 (Colo.1987). The usual standard of review for a statutory classification is the rational basis test—that is, whether the statutory classification is reasonably related to a legitimate state interest. *See, e.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Branson v. City and County of Denver,* 707 P.2d 338 (Colo.1985); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo.1982). Where, however, a statutory classification distinguishes between classes of persons in their exercise of a fundamental right, a standard of strict judicial scrutiny is applicable. This standard requires that the government establish that the classification is necessarily related to a compelling governmental interest. *E.g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972).

To be sure, free speech is a fundamental right guaranteed by both the United States and Colorado Constitutions, but not all forms of expression involve constitutionally protected speech. Public nudity in and of itself, for example, is subject to governmental regulation. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 211 n. 7, 95 S.Ct. 2268, 2273–74 n. 7, 45 L.Ed.2d 125 (1975) (public nudity traditionally is subject to indecent exposure laws). On the other hand, an entertainment program may not be prohibited "solely because it displays the nude human figure." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). Nudity alone, therefore, "does not place otherwise protected material outside the mantle of the First Amendment." *Id.; see also South Florida Free Beaches, Inc. v. City of Miami,* 734 F.2d 608 (11th Cir.1984) (nudity is protected speech only when combined with some form of expression protected by First Amendment); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982, 985 (Colo.1981) (city zoning ordinance prohibiting live nude entertainment anywhere within city violative of First Amendment because "included within live, nude entertainment are forms of communication and expression which are protected by the First Amendment"). As the mode of expression moves from pure speech to conduct, however, the scope of permissible state regulation increases. *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (per curiam); *California v. LaRue,* 409 U.S. 109, 117, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972); *Citizens for Free Enterprise v. Department of Revenue,* 649 P.2d 1054, 1067 (Colo.1982).

Although "the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate that inspired Voltaire's immortal comment [i.e., 'I disapprove of what you say, but I will defend to the death your right to say it']." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion). Nude dancing in a commercially operated nude entertainment establishment arguably involves some degree of constitutionally protected expression. The expressive component of such activity, however, is secondary to the conduct itself, and, as such, cannot be considered one of the more traditional forms of expression at the core of the Free Speech Clauses of the United States or Colorado Constitutions. *See generally, Schad,* 452 U.S. 61, 101 S.Ct. 2176; *American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440; *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *LaRue,* 409 U.S. 109, 93 S.Ct. 390; *Citizens for Free Enterprise,* 649 P.2d 1054.

■ Since the nude dancing under consideration in this case consists primarily of

conduct with some arguably expressive aspects to it, the appropriate standard for equal protection purposes is neither the strict judicial scrutiny standard nor the rational basis test. Rather, the appropriate standard is an intermediate level of scrutiny which asks whether the legislative classification is narrowly tailored to serve .a substantial governmental interest. *See Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980) (where governmental regulation discriminates among forms of a speech related activity, i.e., picketing, the Equal Protection Clause requires that the regulation be finely tailored to serve a substantial state interest); *Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (because picketing involves expressive conduct within the protection of the First Amendment, an ordinance discriminating between various forms of picketing must be tailored to serve a substantial governmental interest). Under this intermediate standard, the government is permitted to impose time, place, and manner restrictions on conduct involving some expressive component as long as such restrictions are content neutral—that is, they do not prohibit or regulate the content of the expression—and do not unreasonably limit alternative avenues of communication and, further, are tailored to effectuate a substantial governmental interest. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986); *see also Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Schad,* 452 U.S. at 68–71, 101 S.Ct. at 2182–84. Such restrictions need not eliminate all less restrictive alternatives, and a reviewing court should accord considerable deference to the legislative choice of means to achieve the governmental goal. *See Community for Creative Non–Violence,* 468 U.S. at 299, 104 S.Ct. at 3072; *accord Board of Trustees v. Fox,* —— U.S. ——, ——, 109 S.Ct. 3028, 3033–34, 106 L.Ed.2d 388 (1989).

### B.

We turn now to the question of whether the state enabling statute, under which the Adams County ordinance was adopted, satisfies equal protection of the law under the intermediate level of scrutiny applicable to conduct with an arguably expressive component. Section 30–15–401(1)(*l*) differentiates between, on the one hand, commercially operated nude entertainment establishments, and, on the other, plays, dramas, ballets, or motion pictures in theaters, concert halls, music halls, museums, schools, or other educational institutions or similar establishments. This statutory classification, in our view, passes constitutional scrutiny under equal protection analysis.

The state enabling statute does not ban nude entertainment altogether, nor does it regulate the content of the entertainment. Rather, the enabling statute authorizes county governments to adopt reasonable regulations relating to minimum age requirements for employees and patrons, limitations on the hours of operation, and restrictions on the location of nude entertainment establishments. The time, place, and manner restrictions authorized by the statute are limited in scope and do not unreasonably inhibit the presentation of nude entertainment in Adams County. The primary purpose of the statute is to effectuate the governmental interest in preserving the character and quality of residential neighborhoods by insulating these areas from the deleterious secondary effects associated with commercially operated nude entertainment establishments. This governmental interest has been recognized as substantial, and one that "must be accorded high respect," for purposes of equal protection analysis. *American Mini–Theatres,* 427 U.S. at 71, 96 S.Ct. at 2453; *accord Playtime Theatres, Inc.,* 475 U.S. at 50, 106 S.Ct. at 930.

The General Assembly obviously was of the view that the presentation of plays, dramas, ballets, or motion pictures in theaters, concert halls, educational institutions, and similar establishments would not

endanger the character and quality of residential neighborhoods in the same manner, or to the same degree that commercially operated nude entertainment establishments posed for such areas. Because section 30–15–401(1)(*l*) permits no more regulation than necessary to address the substantial governmental interest served by the statute, we conclude that the statute is adequately tailored to serve a substantial governmental interest and satisfies equal protection of the laws under the United States and Colorado Constitutions. To hold, as we do, that the state enabling act passes constitutional muster under equal protection analysis, however, is not to say that the Nude Entertainment Ordinance necessarily comports with constitutional standards. The constitutionality of the ordinance involves separate issues to which we now turn.

### III.

■ The county commissioners claim that, contrary to the district court's ruling, the Nude Entertainment Ordinance comports with the United States and Colorado constitutional standards applicable to the conduct involving an arguably expressive component, such as nude dancing. We agree with the county commissioners' claim.

In *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the United States Supreme Court held that when "speech" and "nonspeech" elements are combined in the same course of conduct, the government may regulate the conduct in question, even though such regulation is an incidental limitation on First Amendment expression, so long as the regulation furthers a sufficiently important governmental interest. After acknowledging that a variety of descriptive terms, such as "compelling," "substantial," and "strong," have been employed to characterize the quality of the governmental interest, the Court then stated:

Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679. We apply this four-part test in determining whether the Nude Entertainment Ordinance at issue here comports with First Amendment standards.

#### 1.

There can be no question that the ordinance is within the constitutional power of Adams County. A county "is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state," and vested with such powers as are expressly conferred upon it by the Colorado Constitution and statutory law and "such incidental implied powers as are reasonably necessary to carry out such express powers." *Board of County Commissioners v. Love*, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970). By enacting section 30–15–401(1)(*l*), the Colorado General Assembly has expressly authorized boards of county commissioners to adopt reasonable regulations for commercially operated nude entertainment establishments with respect to the age of employees and patrons, the hours of operation, and the location of such establishments. The Nude Entertainment Ordinance is, in effect, a zoning ordinance calculated to preserve the character and quality of residential neighborhoods within the county. We are satisfied that the board of county commissioners acted within their constitutional power in adopting the ordinance in question.

#### 2.

We are also convinced that the regulatory scheme adopted by the board of county commissioners serves a substantial governmental interest, namely, the preservation of the character and quality of residential neighborhoods. As previously noted, the United States Supreme Court has

characterized the governmental interest in attempting to preserve the quality of urban life as both "important and substantial," *Playtime Theatres, Inc.*, 475 U.S. at 50, 106 S.Ct. at 930, and one that "must be accorded high respect," *American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. at 2452. We agree with those characterizations.

### 3.

Turning to the third factor in the *O'Brien* test, we conclude that the governmental interest furthered by the ordinance is unrelated to the suppression of free expression. The ordinance is content-neutral in the sense that it makes no attempt to control the content of nude entertainment presentations. Moreover, the means chosen by the county to effectuate its interest are not significantly broader than necessary to achieve its goal of preserving the character and quality of residential neighborhoods without concomitantly suppressing any arguably expressive component associated with nude entertainment. In our view, the restrictions incorporated in the ordinance represent a careful response to the substantive problem with which the county was concerned.

The Nude Entertainment Ordinance is similar in some respects to the zoning ordinance at issue in *American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440. In that case the Supreme Court held that the ordinance, which prohibited locating adult theaters within 1,000 feet of any two other "regulated uses" or within 500 feet of any residential zone, did not violate the First or Fourteenth Amendments to the United States Constitution. The Court reasoned that the zoning ordinance was designed to combat the undesirable effects that adult theaters had on residential areas and thus was content neutral. In the Court's view, it was the "secondary effect" of the activity that the zoning ordinances attempted to avoid, rather than "the dissemination of 'offensive' speech." 427 U.S. at 71 n. 34, 96 S.Ct. at 2453 n. 34. Similarly, here, the board of county commissioners is attempting to regulate the secondary effects of nude entertainment establishments on residential neighborhoods and has drawn its ordinance in a way to accomplish that goal. *See Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925 (city ordinance prohibiting adult motion picture theaters from locating within 1000 feet of residential zone, single or multiple family dwelling, church, park, or school constituted valid governmental response to serious problems created by adult theaters and satisfied dictates of First Amendment).

### 4.

We turn to whether any incidental restriction imposed by the ordinance on a constitutionally protected form of expression is no greater than is essential to the furtherance of the governmental interest. In support of the district court's declaration of unconstitutionality, Pecos Junction argues that the ordinance's limitation on the hours of operation and the age and location restrictions are far greater than necessary to further the governmental interest. We are unpersuaded by Pecos Junction's argument.

Although liquor licensed taverns are permitted to operate between the hours of 7:00 a.m. to midnight and from midnight until 2:00 a.m. on weekdays and Saturdays, and are required to close at midnight on Sundays, § 12–47–128(5)(c), 5 C.R.S. (1985), there is no constitutional mandate that a nude entertainment establishment, which is not permitted to sell liquor, must be permitted to operate within the same time span. There are practical differences of constitutional relevance between liquor licensed establishments and nude entertainment establishments. The licensing and operation of taverns are regulated by the Colorado Liquor Code, §§ 12–47–101 to –143, 5 C.R.S. (1985 & 1990 Supp.). The Liquor Code is administered by the executive director of the Department of Revenue, who is authorized to promulgate rules and regulations pertaining to the distribution and sale of "malt, vinous, and spiritous liquors." § 12–47–105(1)(b), 5 C.R.S. (1985),[4]

**4.** Section 12–47–105(2)(a), 5 C.R.S. (1985), states that the rulemaking authority of the executive

to hear and determine complaints against any licensee and to revoke or suspend a licensee for violation of the code or any regulations promulgated thereunder, § 12–47–110(1), 5 C.R.S. (1985), and to administer a comprehensive program inspecting and monitoring the licensed establishment's operations, § 12–47–131, 5 C.R.S. (1985). The administrative regimen established by the Liquor Code, therefore, is calculated to ensure compliance with the regulatory scheme during all hours of a licensed establishment's operations. One of the regulations promulgated by the executive director prohibits live nude entertainment in liquor licensed establishments. Reg. 47–105.1, 1 CCR 203–2 (1979); *see Citizens for Free Enterprise*, 649 P.2d at 1066–68. Nude entertainment establishments are not subject to any similar regulatory program, and Adams County must rely upon the express terms of the Nude Entertainment Ordinance as the method of effectuating the governmental objective of preserving the character and quality of residential neighborhoods within the county. We cannot say that the restrictions on the hours of operation in the ordinance are any greater than are essential to further that governmental objective.

Furthermore, in light of the evidence concerning reported property destruction and criminal activity associated with nude entertainment establishments, we may reasonably presume that the age restrictions in the ordinance reflect a legitimate legislative judgment by the county commissioners that youths under 21 years of age should be protected from the potentially harmful consequences associated with such establishments.[5] We are loathe to second guess the county commissioner's judgment in this respect. *E.g., United States v. Albertini*, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985); *Community for Creative Non–Violence*, 468 U.S. at 299, 104 S.Ct. at 3072.

Finally, the restrictions concerning location are no more burdensome than reasonably necessary to achieve the governmental interest. The evidence presented to the

---

director may cover but shall not be limited to the following subjects:

Compliance with or enforcement or violation of any provision of this article or any rule or regulation issued pursuant to this article; specifications of duties of officers and employees; instructions for local licensing authorities and law enforcement officers; all forms necessary or convenient in the administration of this article; inspections, investigations, searches, seizures, and such activities as may become necessary from time to time; limitation of number of licensees as to any area or vicinity; misrepresentation; unfair practices; unfair competition; control of signs and other displays on licensed premises; use of screens; identification of licensees and their employees; storage; warehouses; transportation; health and sanitary requirements; standards of cleanliness, orderliness, and decency; sampling and analysis of products; standards of purity and labeling; records to be kept by licensees and availability thereof; practices unduly designed to increase the consumption of alcoholic beverages; and such other matters as are necessary for the fair, impartial, stringent, and comprehensive administration of this article, but nothing in this article shall be construed as delegating to the state licensing authority the power to fix prices. The licensing authority shall make no rule which would abridge the right of any licensee to fairly, honestly, and lawfully advertise the place of business of or the commodities sold by the such licensee. All such rules shall be reasonable and just.

5. The board of county commissioners argues that Pecos Junction lacks standing to assert the unconstitutionality of the ordinance's minimum age requirement because no one affected by the ordinance's age requirement is before the court. We reject this contention and choose to address the merits of Pecos Junction's claim. In the First Amendment area, the United States Supreme Court has altered its traditional rules of standing so as to permit attacks on statutes that may infringe on the protected speech or expression of persons not before the court. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Furthermore, because the ordinance prohibits nude entertainment establishments from employing anyone under the age of twenty-one, Pecos Junction is directly affected by this ordinance provision and certainly has the requisite standing to challenge that portion of the ordinance.

trial court shows that the county's regulatory scheme allows for several alternative locations for nude entertainment establishments. Such establishments can locate within the ten square miles of industrially-zoned property without obtaining a special permit and also within approximately 1100 square miles of agriculturally-zoned areas with a special permit.[6] We view the following observations of the Supreme Court in *Playtime Theatres, Inc.*, 475 U.S. at 53–54, 106 S.Ct. at 931–32, as dispositive of Pecos Junction's challenge to the location requirements of the ordinance:

> Finally, turning to the question whether the [City of] Renton ordinance allows for reasonable alternative avenues of communication, we note that the ordinance leaves some 520 acres, or more than five percent of the entire land area of Renton, open to use as adult theater sites. The District Court found, and the Court of Appeals did not dispute the finding, that the 520 acres of land consists of "[a]mple, accessible real estate," including "acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space that is crisscrossed by freeways, highways, and roads."

> \*     \*     \*     \*     \*     \*

That [the adult theater owners] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," *American Mini Theatres*, 427 U.S., at 71, n. 35 [96 S.Ct., at 2453, n. 35] (plurality opinion), we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. *See id.*, at 78 [96 S.Ct. at 2456] (Powell, J., concurring) ("The inquiry for First Amendment purposes is not concerned with economic impact"). In our view, the First Amendment requires only that [the City of] Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement.

We thus hold that the Nude Entertainment Ordinance meets the four-part test of

---

**6.** In arguing that the location restrictions are more burdensome than constitutionally permissible, Pecos Junction asserts that the ordinance's requirement that a conditional use permit be obtained in order to operate a nude entertainment establishment in an agriculturally zoned area deprives it of any reasonable opportunity to operate its establishment within the county because the indefinite standards for the issuance of conditional use permits are likely to result in the arbitrary denial of a permit. Section 6.200 of the Adams County Zoning Regulations states that "[a] conditional use (formally permitted use) is a use of land, structures, or both that may be allowed with restrictions deemed necessary upon approval of the Board of County Commissioners." Section 6.220 of the Zoning Regulations states that all requirements "applicable to a zone change request shall be followed for a conditional use request." The criteria for a zoning change request are set forth in section 6.115 of the regulations, which provides as follows:

> The Planning Commission in making their recommendation and the Board of County Commissioners in approving should consider, but not be limited to the following:

(1) Comply with the requirements of these Regulations and with the area in which it is to be located.

(2) Is consistent with the purposes of these Regulations and with the Comprehensive Plan.

(3) Is compatible with the surrounding area, harmonious with the character of the neighborhood, not detrimental to the immediate area, not detrimental to the future development of the area, and not detrimental to the health, safety, or welfare of the inhabitants of the area and the County.

Local zoning regulations are presumed to be valid, and the burden of proving their unconstitutionality generally is on the party challenging their validity. *See Ford Leasing Development Company v. Board of County Commissioners*, 186 Colo. 418, 426, 528 P.2d 237, 241 (1974). The criteria for a conditional use permit in the Zoning Regulations are calculated to further the county's interest in preserving the health, safety, and welfare of the county, and Pecos Junction has failed to demonstrate that the county will act either arbitrarily or unreasonably in applying the conditional use criteria to any application for a conditional use permit.

*O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, and does not unconstitutionally abridge the First Amendment to the United States Constitution or Article II, section 10 of the Colorado Constitution.

## IV.

We are left then with Pecos Junction's claim that the six-month amortization period in the ordinance for operating as a non-conforming use constitutes a deprivation of property in violation of due process of law. We find no merit in this claim.

We recently addressed the problem of the nonconforming use in *Hartley v. City of Colorado Springs*, 764 P.2d 1216 (Colo. 1988), where we stated:

> It has been said that "the fundamental problem facing zoning is the inability to eliminate the nonconforming use." ...
> Nonconforming uses are disfavored because they reduce the effectiveness of zoning ordinances, depress property values, and contribute to the growth of urban blight.... Because of their undesirable effect on the community, nonconforming uses should be eliminated as speedily as possible.... Accordingly, zoning provisions allowing nonconforming uses to continue should be strictly construed, and zoning provisions restricting nonconforming uses should be liberally construed.

764 P.2d at 1223–24 (citations omitted.) A nonconforming use may be lost for a variety of reasons, including the expiration of a period of amortization. The amortization period, however, must be reasonable.

Whether a particular period of amortization is reasonable necessarily depends upon a balancing of the burden placed on the property owner against the benefits gained by the termination. The zoning benefits sought to be achieved by the Nude Entertainment Ordinance have already been discussed in detail and need no further elabo-

ration here. Although Pecos Junction obviously will be required to cease its operations upon the expiration of the six-month period of amortization, the ordinance permits Pecos Junction to operate during the six-month period while seeking a new location for future operations. The fact that the ordinance may deprive Pecos Junction of what might be its most profitable use of the property in question does not result in a due process violation where, as here, the governmental interest in the regulatory scheme is substantial and the property owner is given a reasonable period of time to relocate a business. *See, e.g. Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 830 (4th Cir.1979) (statutory six-month amortization period upheld in case of adult bookstore selling sexually-oriented books and exhibiting sexually oriented films); *Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709, 585 P.2d 1153, 1160 (1978) (90–day amortization period upheld for adult motion picture theater).

Pecos Junction's challenge to the amortization period consists of an essentially unsupported assertion of a due process violation. In the absence of a stronger showing of unconstitutionality than that present here, we defer to the legislative judgment of the county commissioners on the period of amortization incorporated into the Nude Entertainment Ordinance.[7]

## V.

In summary, we hold that section 30–15–401(*l*), 12A C.R.S. (1986), which authorizes a board of county commissioners to adopt reasonable regulations for the operation of nude entertainment establishments, does not violate equal protection of the laws under either the United States or Colorado Constitution. We also hold that the Nude Entertainment Ordinance adopted by the Adams County Board of County Com-

---

7. Pecos Junction in its brief asserts that the six-month amortization period is a denial of equal protection of the laws because no other nonconforming uses are terminated within this period of time. Pecos Junction's claim filed in district court with respect to the six-month amortization period, however, was limited to a due process claim rather than an equal protection claim. Moreover, Pecos Junction fails to offer any factual foundation whatever for the proposition that its business is similarly situated with other nonconforming users for purposes of its equal protection argument. Under these circumstances, we find its claim devoid of merit.

missioners does not violate the free speech rights of Pecos Junction under the United States or Colorado Constitution. Finally, we hold that the six-month amortization period in the ordinance comports with due process of law.

The judgment of the district court is accordingly reversed.

APPENDIX, NO. 89SA123

ORDINANCE NO. 1

NUDE ENTERTAINMENT ORDINANCE

WHEREAS, there are a significant number of establishments in the unincorporated portion of Adams County in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishments; and,

WHEREAS, many of those establishments do not hold liquor licenses and consequently are not subject to the regulations imposed on nude entertainment by the liquor code; and,

WHEREAS, such establishments of this nature adversely impact the residential neighborhoods in which they are located; and,

WHEREAS, these adverse impacts include attraction of transients, parking and traffic problems, increased crime and noise, decreased property values, increased safety hazards to the neighborhood children, and overall deterioration of neighborhood quality; and

WHEREAS, it is the intent of the Board of County Commissioners to serve a substantial government interest by attempting to preserve the quality and vitality of residential neighborhoods in Adams County; and,

WHEREAS, alternative avenues of communication are not unreasonably limited for "speech" of this nature; and,

WHEREAS, the Colorado State Legislature has enacted Section 30–15–401(1)(*l*)(I), C.R.S.; and,

WHEREAS, Section 30–15–401(1)(1)(I), C.R.S., authorizes the Board of County Commissioners to adopt by ordinance those regulations necessary for the operation of establishments open to the public in which persons appear in a state of nudity for the purpose of entertaining such establishment's patrons.

NOW, THEREFORE, BE IT ORDAINED by the Board of County Commissioners of Adams County, State of Colorado, that operation of establishments open to the public in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishments shall be subject to the following regulations:

(1) These regulations shall apply to any establishment open to the public in which persons appear in a state of nudity for the purpose of entertaining the patrons of such establishments, hereinafter referred to as "Nude Entertainment Establishments." However, these regulations shall not apply to any liquor licensed establishments offering nude entertainment as such establishments are already subject to stringent regulation under the Colorado Liquor Code.

(2) A person appears in a "state of nudity" when such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals.

(3) No one under 21 years of age shall be admitted to any Nude Entertainment Establishment. This minimum age limitation also applies to any employees, agents, servants or independent contractors working on the premises during hours when nude entertainment is being presented.

(4) Nude entertainment shall only be available at Nude Entertainment Establishments from the hours of 4:00 p.m. to 12:00 midnight, Monday through Saturday of each week.

(5) No Nude Entertainment Establishment shall be operated or maintained within 500 feet of any residentially zoned or used property, measured from the closest property line of such residential property to the property line of the Nude Entertainment Establishment.

(6) No Nude Entertainment Establishment shall be operated or maintained within 500 feet of any school or church property, measured from the closest property line of such school or church property to the property line of the Nude Entertainment Establishment.

(7) Any Nude Entertainment Establishment operating at the effective date of this ordinance in violation of parts (5) or (6) above shall be allowed to continue operating for an amortization period of six (6) months. Six months after this ordinance becomes effective all Nude Entertainment Establishments must comply with parts (5) and (6) above or be subject to the penalty provisions set forth herein.

(8) Except for the amortization period set forth in part (7) above, each day of operation in violation of any provision of this ordinance shall constitute a separate offense.

(9) Any person who violates any provision of these regulations commits a class 2 petty offense and upon conviction thereof shall be punishable by a fine of $300 for each separate violation.

(10) Any arresting law enforcement officer shall follow the penalty assessment procedure provided in Section 16–2–201, C.R.S., for any violation of this ordinance.

(11) Any Nude Entertainment Establishment which engages in repeated or continuing violations of these regulations shall constitute a public nuisance. For purposes of these regulations "repeated violations" shall mean three or more violations of any provision set out herein within a one (1) year period dating from the time of any violation, and a "continuing violation" shall mean a violation of any provision set out herein lasting for three or more consecutive days.

(12) The District Attorney, acting pursuant to Section 16–13–302, C.R.S., may bring an action in the District Court for Adams County for an injunction against the operation of such establishments in a manner which violates any of the provisions set out herein.

(13) This ordinance shall become effective January 5, 1988.

(14) If any provision of this ordinance is held invalid or unconstitutional by a court of competent jurisdiction, such decision shall not invalidate this ordinance in its entirety, and to this end the provisions of this ordinance are declared to be severable.

(15) Any nude establishment operating before the effective date of this ordinance shall comply with every provision of this ordinance on the effective date except as set forth in Number 7 above.

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF ADAMS,
STATE OF COLORADO
/s/Leo M. Younger
LEO M. YOUNGER, Chairman
11–30–87
DATE