**BOARD OF COUNTY COMMISSION-ERS OF PARK COUNTY,**
Plaintiff-Appellee,

v.

**WATER QUALITY CONTROL COM-MISSION OF the STATE OF COLORADO, Defendant-Appellant,**

and

**City and County of Denver,**
Defendant-Intervenor-Appellant.

No. 90CA0077.

Colorado Court of Appeals,
Div. IV.

March 14, 1991.

David M. Kanigel, County Atty., Evergreen, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Martha E. Rudolph, Asst. Atty. Gen., Wayne D. Williams, Mi-

chael L. Walker, Henry C. Teigen, Denver, for defendant-intervenor-appellant.

Opinion by Judge METZGER.

In this administrative review, defendant, the Water Quality Control Commission of the State of Colorado (Commission), appeals from the district court order reversing a Commission rule promulgating new standards for three metals in the North Fork of the South Platte River. We affirm.

In 1979, pursuant to the Colorado Water Quality Control Act, § 25–8–101, et seq., C.R.S. (1989 Repl.Vol. 11A), the Commission promulgated the Basic Standards Regulations which created a basin-specific framework for use classifications and water quality standards in Colorado. Department of Health Regulation No. 3.1.0, et seq., 5 Code Colo.Reg. 1002–8. Thereafter, the South Platte Regulation, establishing use classifications and water quality standards for the South Platte River Basin, was adopted. Department of Health Regulation No. 3.8.0, et seq., 5 Code Colo.Reg. 1002–8. *See Amax, Inc. v. Colorado Water Quality Control Commission*, 790 P.2d 879 (Colo.App.1989).

In many instances, the water quality standards adopted were "table values," which were deemed generally sufficient to protect the use classifications. These table values were used when actual ambient water quality was substantially equivalent to the table values or when there were insufficient data to justify different standards. Department of Health Regulation No. 3.8.-8(V)(5), 5 Code Colo.Reg. 1002–8.

In establishing standards based on ambient water quality, the statistical methodology of the mean plus a standard deviation $(X + S)$ was used. Department of Health Regulation No. 3.8.8(V)(7).

In 1987, the Commission conducted a triennial review of the standards as required by § 25–8–202, C.R.S. (1989 Repl.Vol 11A). The Denver Water Board petitioned the Commission, pursuant to § 25–8–207, C.R.S. (1989 Repl.Vol. 11A), to revise the cadmium, lead, and silver standards for segment 4 of the South Platte (the North

Fork of the South Platte River). The Commission gave notice and conducted a rule-making proceeding regarding this and other proposals.

In the rule-making proceeding, the Denver Water Board argued that sufficient data now existed to determine the ambient level of cadmium, lead, and silver in segment 4 of the South Platte; that the ambient levels were higher than the table values set as standards in 1981; and that the standards, therefore, should be changed to reflect the existing ambient levels of these metals.

At the conclusion of the proceeding, the Commission adopted new standards which changed the standard for cadmium from .0009 mg/liter to .0015 mg/liter; for lead from .004 mg/liter to .008 mg/liter; and for silver from .0001 mg/liter to .0002 mg/liter. It stated that the cadmium and lead standards were "based on ambient quality, using the $X + S$ methodology ... calculated from all available, representative data for times when the Roberts Tunnel is not discharging."

The silver standard was based on mean only. The Commission concluded that $X + S$ "may be underprotective" because of the "extreme variability in the available data base." The Commission noted that, since the new silver standard was the "same as the current detection level," the standard was now at the same level that would have been used for enforcement under the prior standard. *See* Department of Health Regulation No. 3.8.24(4), 5 Code Colo.Reg. 1002–8.

The Board of Commissioners of Park County sought judicial review of the new standards for segment 4, arguing that the Commission acted in excess of its statutory jurisdiction, and that it acted arbitrarily and capriciously in failing to adopt temporary standards. The trial court ruled that the standards can be revised only pursuant to § 25–8–207, that these requirements were not satisfied, and that the new standards are unsupported by the record and are arbitrary and capricious. Therefore, the trial court reversed the new rule, and

remanded the cause to the Commission for further proceedings.

## I.

■ The Commission contends that the trial court erred in determining that the water quality standards could be revised only pursuant to § 25–8–207. The Commission argues that the revision was authorized by § 25–8–204, C.R.S. (1989 Repl.Vol. 11A) and that this section does not require findings of inconsistency. We agree.

Section 25–8–204(1), C.R.S. (1989 Repl. Vol. 11A) mandates that the Commission promulgate water quality standards. The term "promulgate" is defined in § 25–8–103(17), C.R.S. (1989 Repl.Vol. 11A), which states:

"'Promulgate' means and includes authority to adopt, and from time to time amend, repeal, modify, publish, and put into effect."

Thus, the Commission is authorized to revise water quality standards pursuant to § 25–8–204.

Unlike § 25–8–207, § 25–8–204 does not require findings of inconsistency and the lack of such findings is not fatal to the revised standards. Therefore, we conclude that the trial court erred in determining that § 25–8–207 was the only applicable section.

## II.

■ Next, the Commission contends that the trial court erred in considering transcripts of Commission deliberations in reaching its decision. The Commission concedes that § 24–4–103(8.1)(c), C.R.S. (1988 Repl.Vol. 10A) vests the court with discretion, in appropriate circumstances, to consider the deliberations of the decision-making body in reviewing its actions. The Commission argues that this consideration should be strictly limited to only those situations in which there has been an affirmative allegation of official misconduct. We find no error.

Section 24–4–103(8.1)(b), C.R.S. (1988 Repl.Vol. 10A), defines the elements which an agency rule-making record must contain. Section 24–4–103(8.1)(c), C.R.S. (1988 Repl.Vol. 10A) provides:

"Upon judicial review, the record required by this section constitutes the official rule-making record with respect to a rule. The agency rule-making record need not constitute the exclusive basis for agency action on that rule or for judicial review thereof."

Although Colorado has adopted the "mental process rule" prohibiting inquiry into a decision-maker's mental process, *Public Utilities Commission v. District Court*, 163 Colo. 462, 431 P.2d 773 (1967), this rule is inapplicable if the administrative action does not result from a quasi-judicial proceeding. *Hadley v. Moffat County School District RE–1*, 681 P.2d 938 (Colo.1984). Rule-making, which was the task the Commission faced here, is quasi-legislative, not quasi-judicial, in character. *Clasby v. Klapper*, 636 P.2d 682 (Colo. 1981).

We conclude that the transcripts of the Commission's deliberations in the rule-making proceeding are analogous to legislative history consisting of transcripts of legislative committee meetings, floor discussions, and reports concerning a statute. Therefore, it was permissible for the trial court to consider the Commission's deliberations, in conjunction with the rest of the record, in conducting its review. *See Colorado Department of Social Services v. Board of County Commissioners*, 697 P.2d 1 (Colo. 1985).

## III.

The Commission next contends that the trial court erred in reversing the revised rule. It argues that, if, as here, the facts are undisputed, the only remaining decisions are ones of policy, which should be accorded substantial deference by a reviewing court. Because we disagree with the premise to that argument—that the facts underlying the revised rule here are not only undisputed but legally sufficient—we must reject its conclusion.

■ Although rules adopted pursuant to a statutory rule-making proceeding are presumed valid, *Regular Route Common Carrier Conference v. Public Utilities Commission*, 761 P.2d 737 (Colo.1988),

**1110**

§ 25-8-204 requires that statistical methodologies used in establishing water quality standards *"must* be based on assumptions that are compatible with the water quality data." (emphasis added) Our review of the record convinces us that the statistical methodologies used here did not meet this standard and that the rule is, therefore, based on insufficient evidence.

All parties to the rule-making proceeding agreed that the data concerning cadmium and lead were severely skewed rather than normally distributed. Yet, the statistical methodology used to interpret the data, X + S, requires, by definition, normal distribution of data. *See Amax, Inc. v. Colorado Water Quality Control Commission, supra.*

The Commission found that the available data base for silver exhibited extreme variability and, thus, decided that use of the X + S methodology "may be under-protective." So, it based its revised standard on the mean of the available data for times when the Roberts Tunnel is not discharging.

The record contains no evidence to justify using this methodology to set a standard. The Commission did not indicate any statistical rationale for this decision, nor is there any indication that using the mean is an appropriate methodology for analyzing and interpreting skewed data.

Because the record is devoid of any other data, or alternate appropriate statistical methodology interpreting existing data, *see Amax, Inc. v. Water Quality Control Commission, supra,* to underpin the Commission's rule changes concerning cadmium, lead, and silver, they are "unsupported by substantial evidence" and cannot stand. *See* § 24-4-106, C.R.S. (1988 Repl.Vol. 10A); *Citizens for Free Enterprise v. Department of Revenue,* 649 P.2d 1054 (Colo. 1982).

The judgment is affirmed.

DAVIDSON and ROTHENBERG, JJ., concur.