Horace BARELA and others similarly situated, Plaintiffs–Appellees,

v.

Karen BEYE, in her official capacity as Executive Director, and the Colorado Department of Social Services, Defendants–Appellants.

No. 94CA1500.

Colorado Court of Appeals, Div. I.

March 21, 1996.

Larsen and Snow, Catherine N. Snow, Roger B. Larsen, Colorado Springs; Colorado Coalition of Legal Services Programs, D. Karen Erickson, for Plaintiffs–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wade Livingston, First Assistant Attorney General, Denver, for Defendants–Appellants.

Opinion by Judge METZGER.

In this action for review of an administrative agency decision and for declaratory and injunctive relief, defendants, Karen Beye, in her official capacity as Executive. Director, and the Colorado Department of Social Services (the Department) appeal the summary judgment and preliminary injunction issued in favor of class action plaintiffs, Horace Barela and others similarly situated. Specifically, defendants challenge the trial court's conclusion that the enabling legislation for the Home Care Allowance (HCA) program unlawfully delegated legislative authority to the Department and that the Department had promulgated a rule that both exceeded its statutory authority and was arbitrary and capricious. We reverse and remand for further proceedings.

Plaintiff Horace Barela is a 68–year–old Colorado resident who suffers from blindness, asthma, and hypertension. He has only one kidney. Because of his condition, Barela is incapable of providing for many of his basic needs. Instead, he relies on the services of a non-professional care provider who assists him in his home. Barela compensates this care provider with funds he receives under the HCA program. Without the services of this care provider, Barela would be unable to function independently and would likely require institutionalization.

HCA was designed to provide supplemental assistance to adults who qualify for Old Age Pension, Aid to the Needy Disabled, or Aid to the Blind. Its purpose is to assist such individuals in obtaining unskilled services in their homes, thus allowing them to function outside of an institutional setting.

HCA is a state program and receives no federal funds. Persistent budgetary constraints in recent years have impaired the Department's ability to provide aid to all of the persons who need it.

At its inception, HCA was administered by the Colorado Department of Social Services. Effective July 1994, the Department was restructured and renamed as the Department of Human Services. *See* §§ 26–1–105 and 26–1–105.5, C.R.S. (1995 Cum.Supp.). At that time, the responsibility for administering HCA was transferred to the newly-created Medical Services Board of the Colorado Department of Health Care Policy and Financing. *See* § 25.5–1–105(1), C.R.S. (1995 Cum.Supp.).

In 1991, the General Assembly amended the HCA enabling legislation by enacting Colo.Sess.Laws 1991, ch. 17, § 26–1–111(2) at 80–81 (2d Extraordinary Session). That statute has been repealed and reenacted by Colo.Sess.Laws 1993, ch. 230, § 26–2–122.3(1)(b) at 1114–15; amended by Colo. Sess.Laws 1994, ch. 268, § 26–2–122.3(1)(b) at 1562–63; amended by Colo.Sess.Laws 1995, ch. 196, § 26–2–122.3(1)(b); and the present version is codified as § 26–2–122.3(1)(b), C.R.S. (1995 Cum.Supp.).

At the time relevant to this dispute, the statute, § 26–1–111(2), provided in pertinent part:

> The state department, under the supervision of the executive director, shall:
>
> . . . .
>
> (o)(I) Promulgate rules and regulations concerning the state home care allowance program. Said program provides payments, subject to available appropriations, to functionally impaired persons who are, or who would be but for their income, eligible to receive old age pension . . . aid to the needy disabled . . . or aid to the blind. . . . To be eligible for a home care allowance, a person's monthly gross income shall be less than the applicable monthly grant standard for the old age pension, aid to the needy disabled, or aid to the blind programs, plus the person's authorized monthly home care allowance grant as determined in accordance with rules promulgated pursuant to this paragraph (o). The payments allow recipients who are in need of long-term care to purchase community-based services as defined in section 26–4–507(2)(c). Such services may include, but need not be limited to, the supervision of self-administered medications, assistance with activities of daily living as defined in section 26–4–507(2)(a), and assistance with instrumental activities of daily living as defined in section 26–4–507(2)(g). The rules adopted by the state department shall specify, in accordance with the provisions of this section, the services available under the program and shall address eligibility criteria for the home care allowance program which shall be in addition to the eligibility criteria for the old age pension, aid to the needy disabled, or aid to the blind programs. In addition, the rules shall specifically provide for a determination as to the persons's *functional impairment,* the person's *unmet need for paid care,* and shall address amounts awarded to persons eligible for home care allowance. The rules shall require that eligibility be determined through the use of a comprehensive and uniform client assessment instrument as defined in section 26–4–507. *The state board may adjust income eligibility criteria, the functional impairment standard, or the amounts awarded to eligible persons or may limit or suspend enrollments as necessary to manage the home care allowance program within the funds appropriated by the general assembly....*

(emphasis added)

Pursuant to this statute, the Department promulgated Department of Social Services Rule 7.101.4, 12 Code Colo. Reg. 2509–2 (Rule 7.101.4), which provided in pertinent part:

A. Definition

The Home Care Allowance (HCA) is a special allowance for the purpose of securing services to an individual in his/her home, based on the caseworker's assessment. The Home Care Allowance is a non-entitlement program designed to serve those clients with the lowest functional abilities and the greatest need for paid care. Eligibility for and authorization amounts of the Home Care Allowance are subject to available appropriations.

B. Eligibility

Eligibility for the Home Care Allowance program shall be based on financial need, the client's functional capacity score, the client's need for paid care score and the available appropriations.

. . . .

3. Effective June 7, 1991, in order to be eligible for the Home Care Allowance program each applicant or client must meet the minimum client functional capacity score of 21 points in the following areas and shall score a minimum of one (1) point on the need for paid care assessment in the following areas:

a. Activities of daily living—includes transfers, bladder care, bowel care, mobility, dressing, bathing, hygiene, eating;

b. Basic instrumental activities of daily living—includes meal preparation, housework, laundry, and shopping;

c. Supportive services—includes medicine management, appointment management, money management, accessing resources, and telephoning.

4. The need for paid care score shall be based on the frequency of the client's or applicant's need for paid care as follows:

| Frequency of Need for paid care | Need for Paid Care Score |
| --- | --- |
| No need for paid care | 0 |
| Up to and including once a week | 1 |
| More than once a week and up to seven days a week | 2 |
| At least two times per day | 3 |

5. Each applicant or client meeting the minimum requirements for the HCA program shall be assigned an authorized amount of Home Care Allowance based on his/her need for paid care score as follows:

| Need for Paid Care Score | Authorized Home Care Allowance Amount per Month |
| --- | --- |
| 1–23 | Up to—$108 |
| 24–37 | Up to—$222 |
| 38 and over | Up to—$330 |

In promulgating this rule, the Department chose to assess an individual's "unmet need for paid care" by measuring the frequency with which that individual required services. This means that the amount of benefits an HCA recipient receives is based on the number of times the recipient needs services rather than upon the amount of time required to provide those services.

On May 13, 1992, the Department reevaluated Barela's eligibility for HCA, using the new formula. This reevaluation resulted in the reduction of Barela's monthly benefits from $309 to $202.

Barela challenged the reduction of his HCA benefits and a hearing was convened before an Administrative Law Judge (ALJ) to determine if the Department had erred. The ALJ issued an initial decision affirming the reduction. After Barela objected to this decision, the Department issued a final decision which also affirmed the reduction.

Thereafter, Barela sought judicial review of the Department's decision pursuant to § 24–4–106, C.R.S. (1988 Repl.Vol. 10A).

Based on a stipulation by the parties, the trial court certified the case as a class action under C.R.C.P. 23(a) & (b)(2), with the plaintiff class consisting of:

All persons in the State of Colorado with regard to whom Home Care Allowance has been or will be denied, reduced, or terminated as a result of the February 7, 1992 publication of the "frequency" regulations at 12 [Code Colo.Reg.] 2509–2, § 7.101.4(B)(3) and (4) and the "payment range" regulation at 12 [Code Colo.Reg.] 2509–2, § 7.101.4(B)(5).

On cross-motions for summary judgment, the trial court ruled that § 26–1–111(2)(o)(I) was unconstitutional, insofar as it delegated legislative authority to the Department, and that Rule 7.101.4 exceeded the Department's statutory authorization and was arbitrary and capricious. The trial court then issued a preliminary injunction to prevent the Department from implementing Rule 7.101.4.

## I.

■ Resolving an initial issue, we conclude that we do have subject matter jurisdiction over this appeal.

Section 13–4–102(1), C.R.S. (1995 Cum. Supp.) provides in pertinent part:

Any provision of law to the contrary notwithstanding, the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts ... except in:

. . . .

(b) Cases in which a statute, a municipal charter provision, or an ordinance has been declared unconstitutional. . . .

Here, the trial court determined that part of the enabling legislation for the HCA program was unconstitutional. Defendants appealed this decision to the court of appeals. Pursuant to § 13–4–110(1)(a), C.R.S. (1987 Repl.Vol. 6A), the court of appeals then referred the question of jurisdiction to the supreme court, which determined that the case was properly within the court of appeals' jurisdiction. That ruling is conclusive. Thus, the appeal is properly addressed, in its entirety, before this court. *See generally Joel L. Schaffer, P.C. v. Christopher M. Sullivan, P.C.,* 844 P.2d 1327 (Colo.App.1992).

## II.

Defendants first contend that the trial court erred in determining that HCA's enabling legislation conferred an unconstitutional delegation of legislative authority to the Department. We agree.

■ When a statute is capable of more than one reasonable construction, one of which comports with constitutional standards for validly delegated authority to an administrative agency, we must accept that construction which supports the validity of the statute. *People v. Lowrie,* 761 P.2d 778 (Colo. 1988).

■ Colo. Const. art. V, § 1 vests the legislative power in the General Assembly. And, the nondelegation doctrine, which is rooted in the constitutional principle of the separation of powers, prohibits the General Assembly from delegating this legislative power to an administrative agency. *Denver v. Board of County Commissioners,* 782 P.2d 753 (Colo.1989). However, the nondelegation doctrine does permit the General Assembly to delegate rulemaking authority to an agency under circumstances in which "there are sufficient statutory standards and safeguards and administrative standards and safeguards, in combination, to protect against unnecessary and uncontrolled exercises of discretionary power." *Cottrell v. City & County of Denver,* 636 P.2d 703, 709 (Colo.1981).

■ To determine if a delegation of authority to an agency is lawful, we must evaluate whether the General Assembly has provided sufficient standards for rational and consistent rulemaking and whether those standards provide adequate procedural safeguards for effective judicial review of agency actions. *Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d 55 (Colo.1988); *Partridge v. State,* 895 P.2d 1183 (Colo.App.1995).

In so doing, we are cognizant that the General Assembly could not define with precision every legitimate agency action without eliminating the flexibility needed to effectuate legislative goals in dealing with complex social dilemmas. *See Denver v. Board of County Commissioners, supra;* see also People v. Lowrie, supra.

## A.

■ The trial court determined that Colo. Sess. Laws 1991, ch. 17, § 26–1–111(2)(*o*)(I)(2d Extraordinary Session) was an unconstitutional delegation of legislative authority insofar as it authorized the Department to "adjust income eligibility criteria, the functional impairment standard, or the amounts awarded to eligible persons or ... limit or suspend enrollments as necessary to manage the home care allowance program within the funds appropriated by the general assembly. . . ." The court concluded that this language failed to provide "sufficient statutory standards and safeguards ... to protect against unnecessary and uncontrolled exercise of discretionary power." We disagree.

First, we note that while the section permitted the Department to adjust income eligibility criteria in light of budgetary constraints, it fixed other eligibility criteria at the same level as those of the Old Age Pension program, the Aid to the Needy Disabled program, and the Aid to the Blind program. These criteria provided a minimum threshold for HCA eligibility and served as a limitation on agency authority.

Likewise, the Department was restricted in its ability to raise the maximum income eligibility cap. Under the statute, it was mandatory that an applicant's monthly gross income be less than the applicable monthly grant standard for the Old Age Pension, Aid to the Needy Disabled, or Aid to the Blind programs, plus the person's authorized monthly HCA grant as determined in accordance with Department rules.

Second, we note that, while the Department was authorized to adjust the functional impairment standard, it was required to assess the impairment of each applicant or client based on a comprehensive and uniform client assessment process and a single client assessment instrument. *See* § 26–4–507, C.R.S. (1995 Cum.Supp.). This uniform system further militated against the danger of arbitrary agency action vis-a-vis any particular HCA applicant or recipient.

Finally, the section permitted the Department only to "adjust income eligibility criteria, the functional impairment standard, or the amounts awarded to eligible persons or … limit or suspend enrollments *as necessary* to manage the home care allowance program within the funds appropriated by the general assembly…." The requirement that the adjustments be "necessary" implies that any such adjustment would have been based on a good-faith determination of the actual need for such adjustment, taking into account the needs of individual applicants and recipients in light of the program budget. *Cf. Veterans of Foreign Wars v. City of Steamboat Springs*, 195 Colo. 44, 575 P.2d 835 (1978)(holding statute authorizing agency to promulgate certain rules "as necessary" was not unduly vague insofar as the word "necessary" delimited the agency's authority

and required it to exercise discretion in good faith).

Thus, we conclude that the statute contained sufficient standards to guide the Department in rational and consistent rulemaking, and that such standards allowed for meaningful judicial review of Department actions taken pursuant to the statute. *See People v. Lowrie, supra* (statute that authorized agency to promulgate rules as necessary for the regulation of sale of alcoholic beverages was legitimate delegation); *see also United States v. Farinas*, 308 F.Supp. 459 (S.D.N.Y.1969)(holding that the phrase "necessary … to carry out the provisions of this title" was a constitutionally adequate delegation). *Bethlehem Evangelical Lutheran Church v. City of Lakewood*, 626 P.2d 668 (Colo.1981).

B.

The trial court also determined that the challenged legislation was unconstitutionally vague insofar as it failed to define "functional impairment" and "unmet need for paid care," leaving "the difficult job to the Department to conjecture an unknown set of variables." Despite the trial court's reliance on the vagueness doctrine, we view this issue as more properly characterized as a question of unconstitutional delegation of legislative authority. *See Mountain View Electric Ass'n v. Public Utilities Commission*, 686 P.2d 1336 (Colo.1984); *see also Loup–Miller Construction Co. v. City & County of Denver*, 676 P.2d 1170 (Colo.1984)(allegations that statutes directed to administrative agencies are unconstitutionally vague raise the issue of unlawful delegation). And, applying that doctrine, we disagree with the trial court's conclusion.

▬ In construing a statute, we must give effect to the intent giving rise to the legislation. In so doing, we first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995). And, if we can give effect to the ordinary meaning of the words adopted by the General Assembly, we should construe the statute as written.

*Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo.1995).

■ The use of the word "shall" in a statute is presumed to connote a mandatory meaning. *Burns v. Board of Assessment Appeals,* 820 P.2d 1175 (Colo.App.1991).

■ As quoted above, § 26–1–111(2)(*o*)(I) required that: "the rules *shall* specifically provide for a determination as to the persons's functional impairment, the person's unmet need for paid care, and *shall* address amounts awarded to persons eligible for home care allowance. . . ." (emphasis added) Since, this provision was phrased in mandatory language, the Department had no discretion to decline to promulgate rules.

Additionally, the provision did not indicate that either of the phrases in question are technical terms possessed of some special meaning. Nor did it require that the Department give a particular meaning to the phrases. Rather, it simply required the Department to promulgate rules that link the nature and extent of a person's functional impairment and unmet need for paid care to a particular dollar amount. In other words, this provision mandated that the amount a person receives under the HCA program must bear some relationship to the person's physical and financial conditions.

■ Furthermore, we reject the trial court's conclusion that the phrases were subjects of conjecture with an unknown set of variables. Under the section, benefits were to be made available to functionally impaired persons. To qualify for HCA benefits, such persons must have had characteristics that would qualify them to receive Old Age Pension, Aid to the Needy Disabled, or Aid to the Blind. The section then listed examples of the kinds of services a person could purchase using HCA benefits and cross-referenced to another statute defining the services with greater specificity. These "community based" services, *see* § 26–4–507(2)(c), C.R.S. (1995 Cum.Supp.), could include assistance with "activities of daily living" *see* § 26–4–507(2)(a), C.R.S. (1995 Cum.Supp.), and "instrumental activities of daily living," *see* § 26–4–507(2)(g), C.R.S. (1995 Cum.Supp.).

Since the statute required that all HCA recipients be functionally impaired, and since the General Assembly has allocated funds for HCA recipients to purchase statutorily enumerated services, it can be presumed that a "functional impairment" is a kind of impairment or disability that would, at very least, interfere with the person's ability to perform these statutorily enumerated services for him or herself. Likewise, since such services are to be purchased using the "paid care" from HCA benefits, a person's unmet need for such care is simply the difference between the person's resources and the cost of the services.

Thus, when read in conjunction with the rest of the section, along with the other statutes cross-referenced therein, we conclude that the provision contained sufficient standards and safeguards to ensure rational and consistent rulemaking. Furthermore, if the Department failed to carry out the mandatory requirements of this provision, meaningful judicial review is possible. *See Denver v. Board of County Commissioners, supra;* see also Cottrell v. City & County of Denver, supra.

### III.

■ Defendants next contend that the trial court erred in determining that the Department exceeded its legislative authorization when it promulgated Rule 7.101.4. We agree.

■ An administrative rule promulgated under statutory rule-making procedures is presumed to be valid, and the burden is on the party challenging the rule to demonstrate that the agency exceeded its statutory authority. *City of Aurora v. Public Utilities Commission,* 785 P.2d 1280 (Colo.1990).

■ An administrative regulation may only carry into effect the purpose or intent behind a statute and may not modify or contravene a statute. *Cohen v. State, Dept. of Revenue,* 197 Colo. 385, 593 P.2d 957 (1979); *Ettelman v. State Board of Accountancy,* 849 P.2d 795 (Colo.App.1992).

■ In deciding whether an administrative regulation exceeds legislative authoriza-

tion, our task is merely to determine the intent of the General Assembly, using traditional tools of statutory construction. If we can do so, then that interpretation must be given effect, and the administrative regulations at issue must be fully consistent with it. *See National Labor Relations Board v. Food & Commercial Workers Union Local 23*, 484 U.S. 112, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987).

When construing an amendment to a statute, we must presume that, in approving such statutory change, the General Assembly acted with an awareness of prior decisional law on the subject matter under inquiry. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994); *see also Resolution Trust Corp. v. Heiserman, supra*. Thus, when an amendment follows closely on a judicial decision interpreting a statute, and the plain meaning of the amendatory language manifests a modification of the statute as previously construed, we must assume that the General Assembly intended to change the law. *Nelson, Haley, Patterson & Quirk, Inc. v. Garney Cos.*, 781 P.2d 153 (Colo.App.1989).

In general, a specific statutory provision prevails over a general provision unless the general provision is later in time and the General Assembly has manifested a clear intent that the general provision shall prevail. *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991); § 2–4–205, C.R.S. (1980 Repl.Vol. 1B).

In *Adams v. Department of Social Services*, 824 P.2d 83 (Colo.App.1991), a division of this court determined that the Department had exceeded its statutory authority when it promulgated regulations to administer the HCA program within a limited budget. In reading several statutory provisions together, the court determined that the primary purpose of the HCA program was to permit individuals with disabilities to receive personal services in their homes in order to maintain their independence from placement in nursing homes or other institutionalized care facilities. The court then considered the Department's regulations in light of that legislative intent and concluded that the Department had, in essence, rewritten "the legislation under the auspices of budgetary constraints." *Adams v. Colorado Department of Social Services, supra*, 824 P.2d at 89.

Shortly thereafter, the General Assembly amended the enabling legislation for the HCA program by enacting the provision here at issue, which required promulgation of rules governing HCA.

Given this background, we are satisfied that the amendment to the HCA enabling legislation was intended to authorize the Department to promulgate rules that would permit it to implement the HCA program within substantial budgetary constraints.

The trial court determined that the underlying intent of the HCA program was to assist recipients in retaining independence, self-care, and self-support insofar as possible. It based this determination on Colo.Sess. Laws 1973, ch. 340, § 119–3–2 at 1178 (legislative declaration for the Colorado Public Assistance Act, Colo.Sess.Laws.1973, ch. 340, §§ 119–3–1 to 119–3–32 at 1178–95) and Colo.Sess.Laws 1991, ch. 298, § 26–1–102(1) at 1895 (amended legislative declaration).

These general statements of legislative intent were aspirational in nature. Moreover, they were enacted before § 26–1–111(2)(*o*)(I), which *specifically* granted the Department authority to promulgate regulations to implement the HCA program. The regulation at issue was promulgated based on this legislative authorization. Therefore, the specific authorization in § 26–1–111(2)(*o*)(I) prevails over the general statements of intent found in the enactments relied on by the trial court. *See Climax Molybdenum Co. v. Walter, supra*.

Thus, we conclude that the Department acted within its statutory authority in promulgating Rule 7.101.4. *See City of Aurora v. Public Utilities Commission, supra; see also Cohen v. Department of Revenue, supra; Ettelman v. State Board of Accountancy, supra*.

## IV.

Defendants finally contend that the trial court erred in its determination that Rule 7.101.4(B) was arbitrary and capricious. We agree.

■ In resolving the issue whether a rule promulgated under informal agency rulemaking procedures, such as those required by § 24–4–103, C.R.S. (1988 Repl.Vol. 10A), is arbitrary and capricious, the underlying question is whether the agency action is reasonable. *Citizens for Free Enterprise v. Department of Revenue*, 649 P.2d 1054 (Colo. 1982)(fn. 6); *Amax, Inc. v. Water Quality Control Commission*, 790 P.2d 879 (Colo. App.1989); *see also Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (agency rule is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise); *see generally* J. Reese, *Administrative Law: Principles and Practice* 799–821 (1995); S. Breyer, *Judicial Review of Questions of Law and Policy*, 38 Admin.L.Rev. 363 (1986).

■ A reviewing court should display sensitivity to the nature and range of determinations that must be made by an administrative agency. The types of rules that an agency may promulgate can be conceptualized as lying along a continuum. On one end of this continuum, rules may be based primarily on policy considerations, with factual determinations playing a tangential role. For such rules, specific factual support is unnecessary, although the reasoning process that led to the promulgation of the rule must be defensible. *Amax, Inc. v. Water Quality Control Commission, supra; see also Citizens for Free Enterprise v. Department of Revenue, supra.*

At the other end of the continuum, the necessity for the rule may be based on discrete facts capable of demonstrative proof. In such a situation, the reasonableness of the rule depends on the degree to which the rule is predicated on provable facts. *Amax, Inc. v. Water Quality Control Commission, supra; see also Citizens for Free Enterprise v. Department of Revenue, supra.*

Lying between the two extremes are numerous agency actions involving a combination of factual determinations and policy choices. In these instances, the nature and scope of judicial review must be tailored to correspond to the combination of facts and policy. *Amax, Inc. v. Water Quality Control Commission, supra.*

Here, in promulgating Rule 7.101.4, the Department established a formula for determining a recipient's unmet need for paid care. This formula focused on the frequency with which a recipient requires a particular form of care.

Section 26–1–111(2)(*o*)(I) did not require that the Department premise its regulations on any particular factual determinations. *See, e.g., Board of County Commissioners v. Water Quality Control Commission*, 809 P.2d 1107 (Colo.App.1991)(agency's enabling legislation required that its rules must be based on assumption that are compatible with certain factual data). Nor did the statute delimit the factors the Department was permitted to consider in promulgating regulations. *See generally Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., supra.* Rather, the statute required that the Department make a policy judgment regarding the method for the distribution of HCA funds within its budget. Thus, it was not necessary for the Department to rely on any particular facts in developing the need for paid care standards. *See Citizens for Free Enterprise v. Department of Revenue, supra.*

The promulgation of the regulation in question involved a matter of discretionary policy judgment within the Department's expertise. Moreover, the record shows that the Department received evidence on the possible disadvantages of using the frequency of a recipient's need for services as a basis for determining the amount of an HCA award. Likewise, internal Department memoranda reflect an awareness of the benefits and limitations of the standards chosen by the Department. Thus, we conclude that the Department was fully cognizant of its range of options when it promulgated the regulation.

Moreover, in our view, the Department was in the best position to choose the standards by which it would implement the HCA program. And, we cannot conclude that a reasonable person, presented with all of the information available to the Department, would have necessarily reached a different decision. *See City of Aurora v. Public Utilities Commission, supra.*

Thus, we conclude that Colo. Sess. Laws 1991, ch. 17, § 26–1–111(2)(*o*)(I)(2d Extraordinary Session) was not an unconstitutional delegation of legislative authority, and that Department of Social Services Rule 7.101.4 was consistent with statutory authority and was not arbitrary and capricious.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

DAVIDSON and RULAND, JJ., concur.